**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LINDSAY O'BRIEN QUARRIE,

                Plaintiff,

v.

The BOARD of REGENTS of the
NEW MEXICO INSTITUTE of
MINING and TECHNOLOGY in their
official capacities, STEPHEN WELLS in     No. 1:23-cv-00546-JFR
his individual and official capacities,
DANIEL LOPEZ in his individual and     **VERIFIED AMENDED COMPLAINT**
official capacities, ALY EL-OSERY in
his individual and official capacities,
and ALISA WIGLEY-DELARA in
her individual and official capacities,

                Defendants.

**<u>VERIFIED AMENDED COMPLAINT FOR FRAUD ON THE COURT, INTENTIONAL
RACIAL DISCRIMINATION, RETALIATION, AND DEFAMATION; REQUESTS FOR
FINAL JUDGMENT TO BE SET ASIDE, APPOINTMENT OF SPECIAL MASTER,
DECLARATORY JUDGMENT, AND PERMANENT PROSPECTIVE INJUNCTION</u>**

COMES NOW Plaintiff Lindsay O'Brien Quarrie, *pro se*, and for his cause of action

states the following.

**INTRODUCTION**

1. Plaintiff is suing the Board of Regents of the New Mexico Institute of Mining and

Technology ("NMT") in their official capacities and Aly El-Osery and Alisa Wigley-DeLara in

their individual and official capacities for having committed fraud on the court in willful

violation of two Court orders (Docs. 308 and 353) by knowingly concealing relevant documents

whose existence and location were central to the just and proper disposition of Plaintiff's claim

of intentional racial discrimination and his related request for a permanent prospective injunction

in his 2017 federal lawsuit *Quarrie v. Wells et al.* (case no. 2:17-cv-00350-MV-GBW). Plaintiff

seeks compensatory and punitive damages against Defendants El-Osery and Wigley-DeLara in

their individual capacities for fraud on the court.

2. Pursuant to this Court's inherent power as prescribed in Fed. R. Civ. P. 60(d)(3),

Plaintiff requests that the Court set aside its final judgment (Docs. 453 and 454) in *Quarrie v.*

*Wells et al.* due to Defendants NMT, El-Osery, and Wigley-DeLara's fraud on the court.

3. Pursuant to Fed. R. Civ. P. 53, Plaintiff requests that the Court appoint a special master

to investigate Defendants NMT, El-Osery, and Wigley-DeLara's fraud on the court.

4. Plaintiff requests a judgment from this Court declaring that the 2015 Settlement

Agreement and Mutual Release ("Settlement Agreement") between Plaintiff and Defendant

NMT *et al.* was unilaterally rescinded by Plaintiff *before* he applied for admission to the PhD

program in Materials Engineering at NMT on January 15, 2023, and that the Settlement

Agreement therefore did not prohibit Plaintiff's admissions application.

5. Plaintiff is suing the Board of Regents of NMT in their official capacities for

compensatory damages for intentional racial discrimination under Title VI of the Civil Rights

Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the Fourteenth Amendment to the United States

Constitution.

6. Plaintiff is suing the Board of Regents of NMT in their official capacities for

compensatory damages for retaliation under Title VI of the Civil Rights Act of 1964 and the

Fourteenth Amendment to the U.S. Constitution.

7. Plaintiff requests a permanent prospective injunction under *Ex parte Young*, 209 US

123 (1908) against the Board of Regents of NMT in their official capacities to forever enjoin

them from continuing to racially discriminate and retaliate against Plaintiff in violation of his

rights, liberties, and privileges under Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment to the U.S. Constitution.

8. Finally, Plaintiff is suing Stephen Wells and Daniel Lopez in their individual and official capacities under the Fourteenth Amendment to the U.S. Constitution for having maliciously defamed Plaintiff by knowingly making false public statements regarding Plaintiff's expulsion from the PhD program in Materials Engineering at NMT on April 27, 2012. Plaintiff seeks compensatory and punitive damages against Defendants Wells and Lopez in their individual and official capacities for their malicious defamation of Plaintiff.

**PARTIES**

9. Plaintiff Quarrie is a former PhD student in Materials Engineering at NMT. He is African American.

10. Defendant NMT is an institute of higher education located in Socorro, New Mexico. It receives federal financial assistance.

11. Defendant Wells is the former President of NMT.

12. Defendant Lopez is the current Interim President of NMT.

13. Defendant El-Osery is the current Dean of Graduate Studies at NMT.

14. Defendant Wigley-DeLara is NMT's former legal counsel.

**JURISDICTION AND VENUE**

15. The Court has jurisdiction over this action because it arises under the Constitution of the United States and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.

16. All causes of action alleged in this matter arose in New Mexico.

17. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

19. From 2004 to 2009, Plaintiff Quarrie worked for NMT as Technical Program Manager and Lead Research Engineer and helped to secure over $14 million of research funding for NMT while designing and building EMRTC METTOP Laboratories on NMT's campus and supporting over a dozen students, faculty members, and regular engineers working or engaged in research there.

20. Plaintiff started his PhD program in Materials Engineering at NMT in the summer of 2009 as a full-time student under a 3-year U.S. Air Force scholarship.

21. For the next three years through the spring of 2012, Plaintiff continued his enrollment in "good standing" at NMT without interruption, including during the summers of 2010 and 2011, as evidenced by Plaintiff's NMT academic transcript.

22. Throughout his PhD program at NMT, Plaintiff was the victim of racial discrimination and academic and administrative incompetence on the part of his academic advisors and NMT administrators.

23. Each time that Plaintiff lodged a formal or informal complaint with NMT faculty and administrators, they retaliated against him, making his schooling situation even worse.

24. Despite the racial discrimination and retaliation against him, Plaintiff managed to complete the required PhD coursework in Materials Engineering at NMT with a commendable 3.78 GPA within three years, as evidenced by Plaintiff's NMT academic transcript.

25. Plaintiff also passed his two required PhD qualifying exams ("candidacy" and "preliminary") at NMT, as evidenced by the Report of Ph.D. Advisory Committee filed in the Office of Graduate Studies.

26. Plaintiff's former NMT research advisor Bhaskar Majumdar testified under oath in

his Fed. R. Civ. P. 30(b)(6) deposition on October 13, 2020 that Plaintiff had indeed passed both of his PhD qualifying exams and completed all of his required PhD coursework at NMT with a 3.78 GPA.

27. Plaintiff also completed almost twice the required number of dissertation hours for the PhD program at NMT, as evidenced by Plaintiff's NMT academic transcript.

28. Plaintiff also met the PhD requirement at NMT of submitting at least one research article for publication in a peer-reviewed scientific journal. In fact, Plaintiff surpassed this requirement by submitting a total six research articles for publication in peer-reviewed scientific journals.

29. Two of Plaintiff's submitted research articles, which were based on his 176-page dissertation manuscript, entitled *Damage Resistant High Transmission Optical Thin Film Coating For Diode Pumped Alkali Lasers (DPALs)*, were published in well-established scientific journals with stringent peer review and reasonably high impact factors (one of the two articles having already been cited over a dozen times to date, including once in a highest-impact optics journal). See https://doi.org/10.1016/j.optmat.2012.10.040 and https://doi.org/10.1063/1.489510

30. On April 27, 2012, the then-Dean of Graduate Studies Lorie Liebrock sent Plaintiff a letter informing him for the first time that his enrollment in the graduate program at NMT had been "terminated" due to Plaintiff's having allegedly "threatened" his research committee members after having successfully passed his preliminary exam earlier that same month.

31. As Plaintiff declared to this Court under penalty of perjury in his 2017 lawsuit against Defendant Wells *et al.* (case no. 2:17-cv-00350-MV-GBW), at no time before, during, or after Plaintiff's preliminary exam in mid-April of 2012 did he ever threaten any of his committee members or anyone else at NMT. See Doc. 419-4 at 1.

32. Nor to this day have any of Plaintiff's committee members or any third-party witnesses ever provided the least bit of evidence that Plaintiff ever threatened any of his committee members or anyone else at NMT.

33. Because he had never threatened any of his committee members or anyone else at NMT, Plaintiff immediately protested and appealed his unjust and unlawful expulsion from the PhD program at NMT in an April 30, 2012 email addressed directly to then-Dean Liebrock and copied to then-President Daniel Lopez and then-Vice President for Academic Affairs Peter Gerity.

34. Between April 30th and May 1st of 2012, then-Registrar Sara Grijalva was directed by Dr. Liebrock to remove Plaintiff's name from the NMT spring graduation list and to add the derogatory and damaging language "Terminated from Graduate Program" to Plaintiff's NMT academic transcript.

35. On May 4, 2012, Plaintiff sent a personal written "appeal" via email to Dr. Liebrock as Dean of Graduate Studies, requesting her help in putting Plaintiff back on the spring graduation list so he could receive his earned doctoral degree and move on with his life and avoid the need to file a lawsuit against NMT, but Dr. Liebrock never responded.

36. Dr. Liebrock's termination of Plaintiff's enrollment in the graduate program at NMT on April 27, 2012 was for *non-academic* reasons.

37. In her Fed. R. Civ. P. 30(b)(6) deposition on October 16, 2020, Dr. Liebrock testified under oath that her termination of Plaintiff's enrollment in the graduate program at NMT was for non-academic reasons:

Q. [Mr. Quarrie]: Dr. Liebrock, was I terminated from the Ph.D. program at New Mexico Tech in the spring of 2012 for academic reasons or nonacademic reasons?

A. [Dr. Liebrock]: Nonacademic.

38. The NMT policy and procedures for non-academic discipline were in force at the time of Plaintiff's expulsion from the PhD program at NMT in April of 2012.

39. The NMT policy and procedures for non-academic discipline were published in the 2011-2012 NMT Student Handbook and online at www.nmt.edu/nmt-student-handbook?start=1.

40. In her October 16, 2020 deposition, Dr. Liebrock testified under oath that there were non-academic disciplinary policies and procedures in place at NMT when Plaintiff was expelled from the PhD program in April of 2012 and that those policies and procedures were published in the NMT Student Handbook:

Q. [Mr. Quarrie]: Dr. Liebrock, were there any […] nonacademic disciplinary policies and procedures in place at New Mexico Tech during the fall semester of 2011 and the spring semester of 2012?

A. [Dr. Liebrock]: Yes, the Student Code of Conduct.

Q. [Mr. Quarrie]: Were those nonacademic disciplinary policies and procedures published by New Mexico Tech in any catalog or handbooks?

A. [Dr. Liebrock]: Yes, they were in the student handbook.

41. On page 82 of the 2011-2012 NMT Course Catalog, it states the following:

New Mexico Tech is committed to the full support of the constitutional rights of its students, including due process in student disciplinary matters. Detailed procedures designed to safeguard students' rights and to guarantee fair and impartial treatment of any disciplinary cases are published in the New Mexico Tech Student Handbook. Methods developed to provide due process in student disciplinary matters are based on the 1967 joint recommendations of the American Association of University Professors, the National Association of Students, and the National Association of Student Personnel Administrators, conforming to Title IX – Educational Amendments of 1972.

42. As stated in Section 11 of the revised 2016 NMT Student Handbook, the required due process for non-academic disciplinary matters includes the following:

Accused students charged with violations of The Student Code must be notified in writing via email and/or campus mail of the charge by the Dean of Students or Dean of Graduate Studies within ten days of the bringing of charges. This notice must contain the particulars specified in the written statement of charges, give the student an opportunity

to discuss the incident with the Dean of Students or Dean of Graduate Studies, and provide a notification of where to find New Mexico Tech's Guide to Conduct and Citizenship and the Non-Academic Discipline Policy.

* * *

The Dean of Students, or Dean of Graduate Studies, or their designated representatives will investigate the charges.

* * *

The Dean of Students or Dean of Graduate Studies will notify the student in writing of his/her determination within twenty days of the receipt of the Bringing of Charges statement or ten days from the end of any additional time period granted to the student. Regardless of the action taken by the Dean of Students or Dean of Graduate Studies, the student has the right to request an appeal.

43. And the 1967 Joint Statement on Rights and Freedoms of Students by the American Association of University Professors *et al*., which is incorporated by reference in the 2011-2012 NMT Course Catalog, states in relevant part the following:

The jurisdictions of faculty or student judicial bodies, the disciplinary responsibilities of institutional officials, and the regular disciplinary procedures, including the student's right to appeal a decision, should be clearly formulated and communicated in advance. Minor penalties may be assessed informally under prescribed procedures.

In all situations, procedural fair play requires that a student charged with misconduct be informed of the nature of the charges and be given a fair opportunity to refute them, that the institution not be arbitrary in its actions, and that there be provision for appeal of a decision.

44. As Dean of Graduate Studies when Plaintiff was expelled from the PhD program at NMT in April of 2012, Dr. Liebrock's responsibility was to be familiar with the due process requirements for non-academic disciplinary matters as stated in the New Mexico Course Catalog, the NMT Student Handbook, and the 1967 Joint Statement on Rights and Freedoms of Students by the American Association of University Professors *et al*.

45. In her October 16, 2020 deposition, Dr. Liebrock testified under oath that Plaintiff had not been given advance notice of the charges against him before being expelled from the

PhD program at NMT on April 27, 2012:

> Q. [Mr. Quarrie]: Dr. Liebrock […] was I notified of any charges in writing specific to the nature of the violation, given details as to time, place, and persons involved by New Mexico Tech?
>
> A. [Dr. Liebrock]: No.

46.  Dr. Liebrock also testified under oath in her October 16, 2020 deposition that Plaintiff had been expelled from the PhD program at NMT in April of 2012 without a hearing:

> Q. [Quarrie]: So regardless of the action taken by the Dean, the student has the right of a hearing and appeal. Did I get a hearing and appeal?
>
> * * *
>
> A. [Dr. Liebrock]: You did not have a hearing […].

47. Thus, Dr. Liebrock violated NMT's policy and procedures for non-academic discipline when she expelled Plaintiff from the graduate program at NMT in April of 2012 without giving him any advance notice of the charges against him and without affording him any opportunity to defend himself against those charges before being subjected to extreme disciplinary measures.

48. Dr. Liebrock's actions therefore constituted a clear violation of Plaintiff's constitutionally protected rights of equal protection and due process under the Fourteenth Amendment to the U.S. Constitution.

49. Having been expelled from the PhD program in Materials Engineering at NMT without due process, Plaintiff was left with no other option but to file a lawsuit against Defendant NMT *et al.* in this Court in April of 2013 (case no. 13-cv-00349-MV-SMV) for breach of contract, intentional racial discrimination, and other violations of his constitutional rights and protections.

50. In 2015, Defendant NMT *et al.* offered to settle with Plaintiff, and on October 8, 2015

the parties executed the Settlement Agreement and Mutual Release ("Settlement Agreement").

51. The Settlement Agreement required the permanent removal of the words "Terminated from Graduate Program" (or any similar language) from Plaintiff's NMT academic transcript and any other related documents in Plaintiff's academic and/or administrative files at NMT:

> The parties agree that the Office of the Registrar of [NMT] (and/or any other [NMT] administrative office) will permanently remove the words "TERMINATED FROM GRADUATE PROGRAM" (or any similar language) from Plaintiff's [NMT] transcript, as well as from any other related documents in Plaintiff's academic and/or administrative files at [NMT], within five (5) business days from the execution of this Settlement Agreement.

52. The language "your enrollment in NMT's graduate program is hereby terminated" in Dr. Liebrock's April 27, 2012 termination letter to Plaintiff is similar to the language "Terminated from Graduate Program" on Plaintiff's NMT academic transcript.

53. Dr. Liebrock's April 27, 2012 termination letter is a related document to Plaintiff's NMT academic transcript.

54. The 2015 Settlement Agreement therefore required the permanent removal of the language "your enrollment in NMT's graduate program is hereby terminated" from Plaintiff's academic and/or administrative files at NMT within five business days from the execution of the Settlement Agreement.

55. On May 26, 2016, Plaintiff personally inspected his academic and administrative files at NMT and discovered for the first time therein four (4) copies of the April 27, 2012 Liebrock termination letter that had not been redacted and that therefore still contained the language "your enrollment in NMT's graduate program is hereby terminated".

56. Immediately upon discovering these four unredacted copies of the April 27, 2012 Liebrock termination letter in his NMT academic/administrative files on May 26, 2016, Plaintiff requested and received copies of them from a NMT administrator. See Exhibit A at 1-4.

10

57. On June 30, 2016, Plaintiff sent a letter to then-President Daniel Lopez at NMT notifying him of the discovery of the copies of the April 27, 2012 Liebrock termination letter in Plaintiff's NMT academic/administrative files and that NMT had failed to meet the Settlement Agreement's requirement of permanently removing of the words "Terminated from Graduate Program" (or any similar language) from Plaintiff's NMT academic transcript and any other related documents in Plaintiff's academic and/or administrative files at NMT within five business days from the execution of the contract.

58. Plaintiff also notified then-President Lopez in his June 30, 2016 letter that because NMT had failed to meet the Settlement Agreement's language removal requirement by the stated deadline, the contract was null and void and Plaintiff was therefore permanently released from any and all promises and agreements stated therein, including the prohibition against Plaintiff's reapplying for admission to the PhD program at NMT in the future.

59. In the fall of 2016, Plaintiff began returning the $6,000 to Defendant NMT and New Mexico Risk Management that he had received pursuant to the Settlement Agreement, but they refused to cash Plaintiff's checks and eventually sent them back to him.

60. On December 2, 2016, Plaintiff formally applied for admission to the PhD program in Materials Engineering at NMT by completing and submitting the online application, which included his paying a processing fee of $45.

61. According to the NMT admissions officer with whom Plaintiff communicated by phone in December of 2016, NMT would officially notify Plaintiff of its final decision on his admissions application by no later than early February of 2017.

62. Having never received a response to his December 2, 2016 admissions application or a refund of his $45 application processing fee from NMT, Plaintiff was forced to take legal

action against Defendant NMT *et al.* by filing a lawsuit in this Court on March 20, 2017 for

intentional racial discrimination under Title VI (case no. 2:17-cv-00350-MV-GBW).

63. After Defendant NMT revealed in its Response to Plaintiff's Request for Production

No. 20 during discovery in late 2019/early 2020 that it had "transferred" "certain documents […]

to a legal file pursuant to the terms of the Settlement Agreement (e.g., the termination letter and

associated communications)", Plaintiff served his Interrogatory No. 16 on Defendant NMT,

which requested the following:

> It is presumed that by "termination letter" in the above context Defendant NMT is
> referring to the April 27, 2012 letter from Lorie Liebrock to Plaintiff. Describe in detail
> how many copies of the April 27, 2012 letter from Lorie Liebrock to Plaintiff (including
> all variations of it) are currently in each of Plaintiff's academic, administrative, and legal
> files at NMT. Include in your answer the total number of variations of this letter – i.e.,
> signed or unsigned, stamped or unstamped, and with or without letterhead – that are
> currently in each of Plaintiff's academic, administrative, and legal files at NMT.

64. Rather than providing an answer to this simple and straightforward request,

Defendant NMT fought tooth and nail to withhold this information from Plaintiff by objecting to

Interrogatory No. 16 in its entirety, which forced Plaintiff to file a motion to compel discovery.

65. In his Order Granting in Part and Denying in Part Plaintiff's Motions to Compel

Discovery Responses (Doc. 308), filed on May 4, 2020, Magistrate Judge Gregory B. Wormuth

found that the information that Plaintiff sought in his Interrogatory No. 16 was self-evidently

relevant and "reasonably proportional to the needs of the case":

> To the extent that Plaintiff's ability to sue is premised on Defendant NMT's failure to
> remove the termination letter from his academic and other administrative files within five
> business days of the Settlement Agreement, the relevance of any current copies of that
> termination letter—including their total number and specific locations—is self-evident.
>
> * * *
>
> For the reasons explained above, the Court finds that the request—at least in the absence
> of specific, persuasive argument to the contrary—is reasonably proportional to the needs
> of the case, and therefore is neither "harassing" nor overbroad.

Doc. 308 at 3 and 5 (footnote omitted).

66. The magistrate judge consequently overruled all of Defendant NMT's objections to Interrogatory No. 16 and ordered Defendant NMT "to provide a full and complete answer" thereto. Doc. 308 at 5.

67. And the magistrate judge made clear "that Interrogatory No. 16 must encompass *all* copies of the termination letter contained in any of Plaintiff's files at NMT, including the four exhibit copies, as Defendant's response to Request for Production No. 20 referenced the termination letter generally." Doc. 308 at 7 (emphasis in original).

68. The "four exhibit copies" referenced by the magistrate judge in his order were those copies of the April 27, 2012 Liebrock termination letter that Plaintiff had discovered upon inspecting his NMT academic and administrative files on May 26, 2016. See Exhibit A at 1-4.

69. Although Defendant NMT produced twenty-four Bates-numbered copies of the Liebrock termination letter in its Supplemental Answer to Interrogatory No. 16 (see Exhibit B at 1-24), it violated the magistrate judge's order by refusing to reveal the current location of those copies in each of Plaintiff's files at NMT, thereby forcing Plaintiff to file a motion for discovery and spoliation sanctions.

70. In his Order Granting in Part and Denying in Part Plaintiff's Motion for Sanctions (Doc. 353), filed on August 3, 2020, Magistrate Judge Wormuth found that "no part of Defendant's supplemented response to Interrogatory No. 16 answers, even by reference, the simple question of which file(s) the copies may currently be found in." Doc. 353 at 4.

71. The magistrate judge therefore ordered Defendant NMT "to update its response to reflect the current file location of *all copies* of the termination letter." Doc. 353 at 6 (emphasis added).

72. In its Second Supplemental Answer to Interrogatory No. 16, the service of which was certified on August 14, 2020 by Defendant NMT's then-legal counsel Alisa Wigley-DeLara, Defendant NMT stated that "each of these twenty-four copies of the termination letter (NMT.00464 through NMT.00487) were in the legal file maintained by Graduate Studies".

73. Then almost a full week after the thirty-day deadline for complying with the Court's August 3, 2020 Order (Doc. 353) had expired, Defendant NMT and its legal counsel produced on September 8, 2020 two additional copies of the Liebrock termination letter with the Bates numbers NMT.02301 and NMT.02302. See Exhibit C at 1-2.

74. Defendant NMT claimed in its Third Supplemental Answer to Plaintiff's Interrogatory No. 16 that these two additional copies of the Liebrock termination letter had been located all the while in "a collection of papers maintained by the former Registrar, Sara Grijalva" at the Registrar's Office.

75. Defendant NMT and its former legal counsel had refused on at least two separate occasions to grant Plaintiff's request during discovery in 2020 to inspect his NMT academic/administrative files in person.

76. Because Plaintiff suspected that Defendant NMT and its legal counsel had not revealed the current location of all copies of the Liebrock termination letter in its possession, Plaintiff wrote a letter on August 28, 2020 to NMT Records Custodian Melissa Tull, requesting under the New Mexico Inspection of Public Records Act, 14-2-1 NMSA 1978 *et seq*., that she provide him with copies of the following public records at NMT:

    (1) All documents in Lindsay O'Brien Quarrie's academic and administrative files (including any collections of important papers in any secure files) currently maintained by the Office of the Registrar at NMT.

    (2) All documents in Lindsay O'Brien Quarrie's academic and administrative files currently maintained by the Office of Graduate Studies.

77. Between September 15, 2020 and October 12, 2020, Ms. Tull responded to Plaintiff's request by providing him with ten files containing thousands of documents (including dozens of copies of the Liebrock termination letter) maintained by the Office of Graduate Studies (and one additional file maintained by the Registrar's Office) without specifying which of those documents were currently located in the legal file (as opposed to the academic/administrative file) maintained by the Office of Graduate Studies.

78. Ms. Tull's response to Plaintiff's August 28, 2020 public records request therefore failed to clarify matters. In fact, it only made them more confusing.

79. On July 7, 2021, this Court ruled against Plaintiff's Title VI racial discrimination claim and related request for a permanent prospective injunction and dismissed his case with prejudice. See Docs. 453 and 454.

80. On June 27, 2022, the Tenth Circuit Court of Appeals affirmed this Court's ruling, impelling Plaintiff to petition the U.S. Supreme Court for a writ of certiorari.

81. Then on October 18, 2022, while his petition to the U.S. Supreme Court was still pending, Plaintiff personally visited the NMT campus in Socorro with a witness over the age of eighteen for the purpose of inspecting his NMT academic and administrative records pursuant to the New Mexico Inspection of Public Records Act, NMSA 1978, §§ 14-2-1 *et seq*.

82. Plaintiff's inspection of his NMT academic and administrative records on October 18, 2022 had been approved and scheduled by NMT Records Custodian Melissa Tull.

83. Upon inspecting his *non-legal* academic/administrative file maintained by the Office of Graduate Studies at NMT, Plaintiff discovered therein for the first time two (2) additional copies of the Liebrock termination letter.

84. During that same inspection on October 18, 2022, Plaintiff made several verbal

15

requests for photocopies of the two additional copies of the Liebrock termination letter pursuant

to the New Mexico Inspection of Public Records Act, NMSA 1978, §§ 14-2-1 *et seq*., but

Defendant Aly El-Osery, who is the current Dean of Graduate Studies at NMT, refused to

provide them or to allow Plaintiff to make his own photocopies.

85. On October 18 and 19, 2022, Plaintiff sent written requests to Defendant El-Osery

and to NMT Records Custodian Tull for photocopies of the two additional copies of the Liebrock

termination letter, but they still did not provide them.

86. After having been contacted via email on October 24, 2022 by NMT's legal counsel

Carol Dominguez Shay, who wrote that she would "respond shortly with next steps that will

hopefully resolve the matter", and after having patiently waited for another week without

receiving the requested photocopies of the two additional copies of the Liebrock termination

letter, Plaintiff sent Ms. Shay a letter on October 31, 2022, explaining why he had a right to

receive the requested photocopies without delay and that if NMT continued to refuse to comply

with his written requests, he would be obliged to legally enforce his right.

87. Finally, on November 4, 2022, Ms. Shay sent Plaintiff digital copies of the two

additional copies of the Liebrock termination letter that he had discovered on October 18, 2022

in the Office of Graduate Studies at NMT.

88. On November 9, 2022, Plaintiff visited the NMT campus in Socorro with a witness

over the age of eighteen who was also a notary public for the purpose of inspecting his

academic/administrative file in the Department of Materials Engineering, but upon meeting with

NMT's legal counsel Ms. Shay and NMT Records Custodian Tull, Plaintiff was informed that no

such file existed.

89. During that same meeting on November 9, 2022, Ms. Shay showed Plaintiff the two

additional copies of the Liebrock termination letter that Plaintiff had previously discovered on

October 18, 2022 in his non-legal academic/administrative file maintained by the Office of

Graduate Studies at NMT. The two copies of the letter had since been removed from that file and

placed in a separate folder with the title on it "Letters mistakenly in Graduate Office File

Removed 10/18/2022". See Exhibit D at 1-4.

90. After NMT's legal counsel Ms. Shay formally admitted that the two additional copies

of the Liebrock termination letter were in Plaintiff's Office of Graduate Studies file on October

18, 2022, a NMT administrator provided Plaintiff with photocopies of the two copies of the letter

(as well as of the front cover of the folder containing them), which were then immediately

notarized by the notary public accompanying Plaintiff during the meeting on November 9, 2022

at NMT. See Exhibit D at 1-4.

91. The two additional copies of the Liebrock termination letter first discovered by

Plaintiff on October 18, 2022 during the inspection of his non-legal academic/administrative file

maintained by the Office of Graduate Studies at NMT are different from those copies of the

Liebrock termination letter previously discovered by Plaintiff or previously provided by

Defendant NMT in compliance with the Court's two orders (Docs. 308 and 353), as a

comparison between Exhibits A, B, C, and D readily demonstrates.

92. The existence and location of the two additional copies of the April 27, 2012

Liebrock termination letter first discovered by Plaintiff on October 18, 2022 during the

inspection of his non-legal academic/administrative file maintained by the Office of Graduate

Studies at NMT were known to Defendants NMT, El-Osery, and Wigley-DeLara at the time of

the Court's two orders (Docs. 308 and 353) in 2020.

93. Despite being ordered by this Court to reveal the existence and current location of all

copies of the Liebrock termination letter in NMT's possession, Defendants NMT, El-Osery, and Wigley DeLara willfully violated the Court's two orders (Docs. 308 and 353) by knowingly concealing the two copies of the Liebrock termination letter later discovered by Plaintiff on October 18, 2022 when he inspected his non-legal academic/administrative file maintained by the Office of Graduate Studies at NMT.

94. The act of knowingly concealing the existence and location of documents in willful violation of a court order constitutes fraud on the court.

95. On November 15, 2022, Plaintiff sent Defendant NMT and New Mexico Risk Management his *Fourth Notice of Rescission* via email and Certified U.S. Mail, informing them that he had unilaterally rescinded the 2015 Settlement Agreement due to Defendants NMT, El-Osery, and Wigley-DeLara's fraud on the court and Defendant NMT's material breach of the 2015 Settlement Agreement. See Exhibit E at 1.

96. Plaintiff also offered in his November 15, 2022 *Fourth Notice of Rescission* to return the $6,000 that he had received from NMT and New Mexico Risk Management pursuant to the 2015 Settlement Agreement. See Exhibit E at 2.

97. In addition, Plaintiff explained in his November 15, 2022 *Fourth Notice of Rescission* that "[a]ny refusal on the part of NMT *et al.* to accept my offer to return the $6,000 does not invalidate the unilateral rescission of the Settlement Agreement." Exhibit E at 2.

98. Plaintiff has since confirmed with the U.S. Postal Service that both Defendant NMT and New Mexico Risk Management received a hardcopy of Plaintiff's November 15, 2022 *Fourth Notice of Rescission* by no later than November 18, 2022.

99. Despite having received a copy of Plaintiff's *Fourth Notice of Rescission*, neither Defendant NMT nor New Mexico Risk Management has responded to Plaintiff's offer to return

the $6,000.

100. Nor have Defendant NMT and New Mexico Risk Management even acknowledged the receipt of Plaintiff's *Fourth Notice of Rescission*.

101. On December 5, 2022, the U.S. Supreme Court denied Plaintiff's petition for a writ of certiorari.

102. Also on December 5, 2022, Plaintiff notified this Court of Defendant NMT's fraud on the court. See Doc. 468.

103. Because Plaintiff's unilateral rescission of the Settlement Agreement on November 15, 2022 had forever released him from the contract's reapplication prohibition, Plaintiff applied for admission on January 15, 2023 to the PhD program in Materials Engineering at NMT, which included his paying a $60 application fee.

104. On November 15, 2022, NMT sent Plaintiff a payment notification.

105. On January 16, 2023, Plaintiff received an application confirmation from NMT.

106. Then suddenly four days later on January 20, 2023, Plaintiff received an email message from NMT stating without explanation that his refund had been processed that same day and that his credit card had been credited for a total of $60.00.

107. This unilateral action on NMT's part abruptly and permanently cancelled Plaintiff's January 15, 2023 admissions application to the PhD program in Materials Engineering at NMT.

108. Because neither Defendant NMT nor Defendant El-Osery would provide Plaintiff with an explanation justifying the cancellation of his admissions application, Plaintiff contacted Defendant NMT's legal counsel Ms. Shay by email on January 30, 2023.

109. In her email response of February 3, 2023, Ms. Shay explained to Plaintiff that NMT did not process his application and returned the administrative fee because under the Settlement

Agreement with NMT he had agreed not to reapply to NMT. See Exhibit F at 1.

110. When Ms. Shay wrote her February 3, 2023 email response to Plaintiff, she and Defendant NMT had already received Plaintiff's November 15, 2022 *Fourth Notice of Rescission* by both email and U.S. Certified Mail and were therefore fully aware that Plaintiff had unilaterally rescinded the Settlement Agreement, thereby forever removing any prohibition against Plaintiff's constitutional liberty to reapply for admission to the PhD program at NMT.

111. On May 13, 2023, Plaintiff sent Defendant NMT a letter via Certified U.S. Mail stating his demands in order to prevent the need for filing the present lawsuit.

112. Despite having received Plaintiff's demand letter by no later than May 17, 2023, Defendant NMT has still not responded to Plaintiff's demands or even acknowledged the receipt of his letter.

## COUNT I: FRAUD ON THE COURT

113. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

114. Plaintiff is suing the Board of Regents of NMT in their official capacities and Aly El-Osery and Alisa Wigley-DeLara in their individual and official capacities for having committed fraud on the court in willful violation of two Court orders (Docs. 308 and 353) by knowingly concealing at least two copies of the April 27, 2012 Liebrock termination letter whose existence and location were central to the just and proper disposition of Plaintiff's claim of intentional racial discrimination and his related request for a permanent prospective injunction in his 2017 federal lawsuit against Defendant Wells *et al*. (case no. 2:17-cv-00350-MV-GBW). Plaintiff seeks an award of compensatory and punitive damages against Defendants El-Osery and Wigley-DeLara in their individual capacities for fraud on the court.

115. At the time that Defendants NMT and Wigley-DeLara certified to Plaintiff and to this Court that there were a total of twenty-four copies of the Liebrock termination letter in their possession and that all of them were located in the legal file maintained by the Office of Graduate Studies at NMT, they willfully violated the Court's two orders (Docs. 308 and 353) by knowingly concealing the existence and location of at least two additional copies of the April 27, 2012 Liebrock termination letter located in Plaintiff's non-legal academic/administrative file maintained by the Office of Graduate Studies.

116. Defendants NMT and Wigley-DeLara's willful violation of the Court's two orders (Docs. 308 and 353) by knowingly concealing the existence and location of at least two additional copies of the April 27, 2012 Liebrock termination constitutes fraud on the court.

117. *Fraud on the court* is legally defined as follows: "In a judicial proceeding, a lawyer's or party's misconduct so serious that it undermines or is intended to undermine the integrity of the proceeding." Black's Law Dictionary 776 (10th Ed. 2014).

118. Defendants NMT, El-Osery, and Wigley-DeLara's willful concealment of the location of the two additional copies of the Liebrock termination letter located in Plaintiff's non-legal academic/administrative file maintained by the Office of Graduate Studies at NMT undermined the integrity of Plaintiff's lawsuit because it was for the dishonest purpose of hiding the evidence that indisputably demonstrated that Defendant NMT *et al*. were in material breach of the Settlement Agreement and that Plaintiff therefore had substantive grounds under New Mexico contract law to unilaterally rescind the agreement, thereby fully and forever removing the prohibition against reapplying for admission to the PhD program at NMT.

119. Defendants NMT, El-Osery, and Wigley-DeLara's fraud on the court caused the unjust and unlawful dismissal with prejudice of Plaintiff's intentional racial discrimination claim

under Title VI and his related request for a permanent prospective injunction under *Ex parte Young* in his 2017 federal lawsuit against Defendant Wells *et al.* by depriving Plaintiff of the necessary evidence to conclusively prove the following: (1) Defendant NMT *et al.* were in material breach of the Settlement Agreement; (2) Plaintiff had the right to unilaterally rescind the Settlement Agreement under New Mexico contract law; (3) Plaintiff effectuated the unilateral rescission of the Settlement Agreement *before* applying for admission to the PhD program at NMT in December of 2016; and (4) Defendant NMT's proffered reason for refusing to readmit Plaintiff to the PhD program in 2016 and thereafter – namely, that the Settlement Agreement prohibited Plaintiff's admissions application – was therefore entirely dishonest and nothing but a pretext for Defendant NMT's ongoing racial discrimination and retaliation against Plaintiff as an African American.

120. As a direct and proximate result of Defendants NMT, El-Osery, and Wigley-DeLara's fraudulent conduct, Plaintiff has been highly prejudiced and has sustained substantial legal and monetary damages. Plaintiff therefore seeks an award of compensatory damages including, but not limited to, lost monetary compensation, discovery expenses, and court costs against Defendants El-Osery and Wigley-DeLara in their individual capacities.

121. Defendants NMT, El-Osery, and Wigley-DeLara's fraudulent conduct was willful and motivated by malice and/or reckless indifference to Plaintiff's legal rights and protections, entitling Plaintiff to an award of punitive damages.

122. Defendants El-Osery and Wigley-DeLara are jointly and severally liable for damages including, but not limited to, compensatory and punitive damages, discovery expenses, court costs, and civil penalties.

**COUNT II: REQUEST FOR FINAL JUDGMENT TO BE SET ASIDE**

123. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

124. Pursuant to this Court's inherent power as prescribed in Fed. R. Civ. P. 60(d)(3), Plaintiff requests that the Court set aside its July 7, 2021 final judgment in *Quarrie v. Wells et al.* (case no. 2:17-cv-00350-MV-GBW) regarding Plaintiff's intentional racial discrimination claim under Title VI of the Civil Rights Act of 1964 (Count I in his Third Amended Complaint ("TAC"), Doc. 150) and his related request for a permanent prospective injunction under *Ex parte Young*, 209 US 123 (1908) (Count II in his TAC) due to Defendants NMT, El-Osery, and Wigley-DeLara's having committed fraud on the court in willful violation of two Court orders (Docs. 308 and 353) by knowingly concealing relevant documents whose existence and location were central to the just and proper disposition of Plaintiff's claims.

125. Rule 60(d)(3) of the Federal Rules of Civil Procedure states the following:

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(3) set aside a judgment for fraud on the court.

Fed. R. Civ. P. 60(d)(3).

126. This Court therefore has the inherent power to set aside its July 7, 2021 final judgment in *Quarrie v. Wells et al.* regarding Plaintiff's intentional racial discrimination claim under Title VI of the Civil Rights Act of 1964 and his related request for a permanent prospective injunction under *Ex parte Young*, 209 US 123 (1908).

127. No statute of limitations applies to Fed. R. Civ. P. 60(d)(3). Therefore Plaintiff's request is timely.

128. Even if a statute of limitations applied to Fed. R. Civ. P. 60(d)(3), it would be tolled

in the instant case due to Defendants' fraudulent concealment, which was first uncovered by

Plaintiff on October 18, 2022.

129. Defendants NMT, El-Osery, and Wigley-DeLara's willful violation of the Court's

two orders (Docs. 308 and 353) rises to the level of fraud on the court because it was a corrupt

scheme to dishonestly influence the Court's decision on Plaintiff's intentional racial

discrimination claim under Title VI and his related request for a permanent prospective

injunction under *Ex parte Young*.

130. The only acceptable remedy therefore to begin the process of restoring justice to

Plaintiff is for the Court to set aside its July 7, 2021 final judgment in *Quarrie v. Wells et al.*

(case no. 2:17-cv-00350-MV-GBW) and to allow the case to proceed to a jury trial.

## COUNT III: REQUEST FOR THE APPOINTMENT OF A SPECIAL MASTER
## TO INVESTIGATE DEFENDANTS' FRAUD ON THE COURT

131. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

132. Pursuant to Fed. R. Civ. P. 53, Plaintiff requests that the Court appoint a special

master to investigate Defendants NMT, El-Osery, and Wigley-DeLara's fraud on the court for

the following three reasons: (1) Defendant NMT and its legal counsel have continuously played a

shell game with Plaintiff concerning the existence, location, and transfer of the copies of the

April 27, 2012 Liebrock termination letter in NMT's possession; (2) if Defendant NMT's past

failure to fully comply with Plaintiff's discovery requests and the Court's two Orders (Docs. 308

and 353) is prologue, then it is highly unlikely that Defendant NMT will fully comply with any

future discovery requests from Plaintiff or any future orders from this Court as regards the

existence, location, and transfer of copies of the Liebrock termination letter in NMT's

possession; and (3) a special master appointed by the Court pursuant to Rule 53 will be able to

get to the bottom of Defendants NMT, El-Osery, and Wigley-DeLara's fraud on the court in

expedited fashion by carrying out a narrowly tailored investigation of each party's involvement

in the concealment of any copies of the Liebrock termination letter in NMT's possession. See

Fed. R. Civ. P. 53(c).

133. Upon information and belief, Defendants are still concealing the current location of

other copies of the April 27, 2012 Liebrock termination letter in NMT's possession.

134. Defendants NMT, El-Osery, and Wigley-DeLara should bear the entire cost of the

special master's investigation of their fraud on the court.

135. Finally, the special master's report should be adopted by this Court.

**COUNT IV: REQUEST FOR DECLARATORY JUDGMENT**

136. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

137. Plaintiff requests a judgment from this Court declaring that the 2015 Settlement

Agreement between Plaintiff and Defendant NMT *et al*. was unilaterally rescinded by Plaintiff

*before* he applied for admission to the PhD program in Materials Engineering at NMT on

January 15, 2023, and that the Settlement Agreement therefore did not prohibit Plaintiff's

admissions application.

138. One of the contractual requirements in the 2015 Settlement Agreement was the

permanent removal of the words "Terminated from Graduate Program" (or any similar language)

from Plaintiff's NMT academic transcript, as well as from any other related documents in

Plaintiff's academic and/or administrative files at NMT, within five business days from the

execution of the contract, which was on October 8, 2015.

139. The adjective *related* is legally defined as "[c]onnected in some way, having

relationship to or with something else". Black's Law Dictionary 1479 (10th Ed. 2014).

140. The April 27, 2012 Liebrock termination letter contains almost identical language to "Terminated from Graduate Program" and is indisputably a related document to Plaintiff's NMT academic transcript because the language "Terminated from Graduate Program" added to Plaintiff's NMT academic transcript was directly influenced by and/or borrowed from the language "your enrollment in NMT's graduate program is hereby terminated" in the April 27, 2012 Liebrock termination letter, as evidenced by Dr. Liebrock's direction to then-Registrar Sara Grijalva to add that language to Plaintiff's NMT academic transcript.

141. To interpret the Settlement Agreement's language removal requirement as pertaining only to Plaintiff's NMT academic transcript and not to "any other related documents in Plaintiff's academic and/or administrative files at [NMT]", including the Liebrock termination letter, ignores the plain language of the contract and defies common sense, for it would be pointless to remove the derogatory and damaging language "Terminated from Graduate Program" from one document on file at NMT while allowing it to remain in others, since it would have the same negative effect on Plaintiff's academic standing and reputation.

142. As evidenced by Defendant Wigley-DeLara's email of January 23, 2020, which she wrote to Plaintiff in her official capacity as NMT's attorney during discovery, Defendant NMT fully understood that the Settlement Agreement required the removal of the language "Terminated from Graduate Program" (or any similar language) from not only Plaintiff's academic transcript but also his academic and administrative files at NMT:

> Obviously, the Settlement Agreement required NMT to remove references to your termination from your transcript, academic, or administrative files. See p. 2 (NMT "will permanently remove the words 'terminated from graduate program' (or any similar language) from Plaintiff's NMIMT transcript, as well as from any other related documents in Plaintiff's academic and/or administrative files.") The termination letter (which is what it is) in its entirety is a reference to your termination from the Graduate

Program. This letter and communications about this letter (all of which have been produced) are contained in a legal file maintained by NMT pursuant to the terms of the Settlement Agreement.

Exhibit G at 1.

143. Defendant NMT's failure to remove the two additional copies of the Liebrock termination letter from Plaintiff's non-legal academic/administrative file maintained by the Office of Graduate Studies constitutes material breach of contract, which is substantive grounds under New Mexico contract law for unilaterally rescinding the Settlement Agreement.

144. As evidenced by his *Fourth Notice of Rescission*, Plaintiff unilaterally rescinded the Settlement Agreement on November 15, 2022. See Exhibit E at 1-2.

145. Despite having received Plaintiff's *Fourth Notice of Rescission* by no later than November 18, 2022, Defendant NMT *et al.* have refused to acknowledge Plaintiff's unilateral rescission of the Settlement Agreement. See Exhibit F at 1.

146. Plaintiff therefore requests a judgment from this Court declaring that the 2015 Settlement Agreement between Plaintiff and Defendant NMT *et al.* was unilaterally rescinded by Plaintiff *before* he applied for admission to the PhD program in Materials Engineering at NMT on January 15, 2023, and that the Settlement Agreement therefore did not prohibit Plaintiff's admissions application.

147. The New Mexico statute of limitations for requesting declaratory judgment regarding a rescission based on breach of contract is two (2) years. See NMSA 2018 § 37-1-23(A, B).

148. The time of accrual in the instant case was when Plaintiff first discovered Defendants' fraud on the court and material breach of contract on October 18, 2022. Thus, Plaintiff's request for declaratory judgment is timely.

## COUNT V: INTENTIONAL RACIAL DISCRIMINATION
## UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

149. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

150. Plaintiff is suing the Board of Regents of NMT in their official capacities for compensatory damages for intentional racial discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., and the Fourteenth Amendment to the U.S. Constitution.

151. Under the heading "Prohibition against exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs on ground of race, color, or national origin", Title VI states the following:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

152. Plaintiff has identified at least two types of financial assistance that NMT has received from the U.S. government since January 1, 2023: federal research grants and federal student loans. Thus, NMT is a federally funded institute of higher education. As such, it is subject to the statutory law of Title VI.

153. On January 16, 2023, NMT abruptly and permanently cancelled Plaintiff's January 15, 2023 admissions application to the PhD program at NMT without due process.

154. Plaintiff's January 15, 2023 admissions application to the PhD program at NMT was not prohibited by the terms of the 2015 Settlement Agreement because that contract had already been unilaterally rescinded by Plaintiff on November 15, 2022 due to Defendant NMT's material breach of contract and fraud on the court, and Plaintiff had notified Defendant NMT of the unilateral rescission by way of his *Fourth Notice of Rescission*. See Exhibit E at 1-2.

155. Thus, Defendant NMT's explanation by way of their attorney's February 3, 2023 email to Plaintiff that the cancellation of his January 15, 2023 admissions application to NMT was due to the Settlement Agreement's prohibition against reapplying for admission to the PhD program at NMT is nothing but a pretext for Defendant NMT's racial discrimination against Plaintiff as an African American in violation of his rights, liberties, and privileges under Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment to the U.S. Constitution.

156. Due to his extensive professional engineering experience, Plaintiff is more highly qualified for the PhD program in Materials Engineering at NMT than the vast majority of the other students who were admitted (or readmitted) to that program (and other related PhD programs at NMT) in or around the same year (2023) that Plaintiff applied for admission.

157. Plaintiff has identified several non-Black students who are currently enrolled in the PhD program in Materials Engineering (and other related PhD programs) at NMT and who were admitted thereto in or around the same year (2023) that Plaintiff applied for admission despite the fact that their qualifications are inferior to Plaintiff's. Thus, those non-Black students were treated better than Plaintiff.

158. As a direct and proximate result of Defendant NMT's ongoing intentional racial discrimination against Plaintiff by refusing to readmit him to the PhD program in Materials Engineering in 2023 on the ground of race, Plaintiff has suffered damages, both personally and professionally. Those damages include, but are not limited to, loss of education, loss of opportunity, loss of employment, and loss of income.

159. Plaintiff therefore seeks a judgment under Title VI and the Fourteenth Amendment against the Board of Regents of NMT in their official capacities for compensatory damages in an amount to be determined at trial.

## COUNT VI: RETALIATION UNDER TITLE VI
## OF THE CIVIL RIGHTS ACT OF 1964

160. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

161. Plaintiff is suing the Board of Regents of NMT in their official capacities for

compensatory damages for retaliation under Title VI of the Civil Rights Act of 1964 and the

Fourteenth Amendment to the U.S. Constitution.

162. As the Department of Justice's Title VI Legal Manual makes clear, Title VI contains

an implied cause of action for retaliation:

> Title VI does not include an express provision prohibiting retaliation. Nonetheless,
> courts, including the Supreme Court, have held that various anti-discrimination statutes
> contain an implied cause of action for retaliation based on the general prohibition against
> intentional discrimination.

DOJ Title VI Legal Manual, § VIII, p. 2 (footnote omitted).

163. Under the authority of Section 602 of Title VI, the DOJ has issued the following

anti-retaliation provision in its Title VI regulations:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate
> against any individual for the purpose of interfering with any right or privilege
> secured by [Title VI], or *because he has made a complaint, testified, assisted, or
> participated in any manner in an investigation, proceeding or hearing under this
> subpart*.

28 C.F.R. § 42.107(e) (emphasis added).

164. Defendant NMT retaliated against Plaintiff in violation of Title VI and the

Fourteenth Amendment as a means of punishing him and getting even with him by cancelling his

January 15, 2023 admissions application to the PhD program in Materials Engineering at NMT

and by refusing to readmit him to said program at NMT in 2023 without due process because

Plaintiff had engaged in the constitutionally protected right of filing a federal lawsuit against

Defendant NMT *et al*. for intentional racial discrimination in 2017.

165. As a direct and proximate result of Defendant NMT's ongoing retaliation against Plaintiff, Plaintiff has suffered damages, both personally and professionally. Those damages include, but are not limited to, loss of education, loss of opportunity, loss of employment, and loss of income.

166. Plaintiff therefore seeks a judgment under Title VI and the Fourteenth Amendment against the Board of Regents of NMT in their official capacities for compensatory damages in an amount to be determined at trial.

### COUNT VII: REQUEST FOR PERMANENT PROSPECTIVE INJUNCTION

167. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

168. Plaintiff requests a permanent prospective injunction under *Ex parte Young*, 209 US 123 (1908) against the Board of Regents of NMT in their official capacities to forever cease violating Plaintiff's rights, liberties, and privileges under Title VI and the Fourteenth Amendment by refusing to readmit him to the PhD program in Materials Engineering at NMT on the ground of race and by retaliating against him because he took legal action against Defendant NMT *et al.* for intentional racial discrimination in 2017.

169. The permanent prospective injunction under *Ex parte Young* that Plaintiff seeks against the Board of Regents of NMT in their official capacities does not implicate special state sovereignty interests or core state functions.

### COUNT VIII: MALICIOUS DEFAMATION UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

170. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

171. Plaintiff is suing Stephen Wells and Daniel Lopez in their individual and official

capacities under the Fourteenth Amendment to the U.S. Constitution for malicious defamation

regarding Plaintiff's expulsion without due process from the PhD program in Materials

Engineering at NMT on April 27, 2012. Plaintiff seeks compensatory and punitive damages

against Defendants Wells and Lopez in their individual and official capacities for having

maliciously defamed Plaintiff.

172. It is an indisputable fact that Plaintiff's enrollment in the PhD program at NMT was

terminated on April 27, 2012 without due process and thus in violation of NMT's policy and

procedures for non-academic discipline. See ¶¶ 30-48, *supra*.

173. On July 7, 2020, attorney Morris J. Chavez of SaucedoChavez, P.C. wrote a letter to

the New Mexico Office of the Attorney General and attached thereto as "Exhibit A" an undated

three-page letter from Defendant Wells to Mr. Chavez in which Defendant Wells knowingly

misrepresents the facts of Plaintiff's PhD program at NMT by falsely stating that "No actions

have been taken by NMT that violated our university's policies." See Exhibit H at 1.

174. In his September 18, 2020 deposition, Defendant Lopez testified under oath that he

believed Plaintiff was afforded due process when expelled from the PhD program at NMT in

2012 without providing any evidence to support his testimony.

175. When Defendant Wells wrote his 2020 letter to Mr. Chavez and when Defendant

Lopez testified under oath in his September 18, 2020 deposition, they both knew that their

statements were false because as then-President and former President of NMT, respectively, and

as defendants in Plaintiff's 2017 federal lawsuit they were both fully aware of the fact that

Plaintiff had been expelled from the PhD program at NMT in 2012 without due process and thus

in violation of NMT's policy and procedures for non-academic discipline.

176. Defendant Wells's false statement in his 2020 letter to Mr. Chavez and Defendant

Lopez's false statement under oath in his September 18, 2020 deposition qualify as defamation because they are in effect calling Plaintiff a liar by contradicting his claim based on documented evidence that he was in fact expelled from the PhD program at NMT in 2012 without due process and thus in violation of NMT's policy and procedures for non-academic discipline.

177. Upon information and belief, Defendants NMT, Wells, Lopez, and their legal counsel have also maliciously defamed Plaintiff by knowingly misrepresenting the facts of Plaintiff's expulsion from the PhD program at NMT to other third parties, including, but not limited to, the U.S. Department of Education's Office for Civil Rights, the Higher Learning Commission, the New Mexico State Legislature, and the Governor's Office of New Mexico.

178. The three-year statute of limitations for personal injury in NMSA 2018 § 37-1-8 governs Plaintiff's malicious defamation claim against Defendants Wells and Lopez.

179. The accrual dates of Defendants Wells and Lopez's malicious defamation of Plaintiff were February 3, 2023 (when Plaintiff first discovered Wells's letter) and September 18, 2020 (the date of Lopez's deposition), respectively. Thus, Plaintiff's malicious defamation claim against Defendants Wells and Lopez is timely.

180. As a direct and proximate result of Defendants Wells and Lopez's ongoing malicious defamation of Plaintiff, Plaintiff has suffered damages, both personally and professionally, including, but are not limited to, emotional distress and financial loss.

181. Specifically, the U.S. Government would have already discharged Plaintiff's federal student loans were it not for Defendants Wells and Lopez's malicious defamation of Plaintiff.

182. Plaintiff therefore seeks a judgment under the Fourteenth Amendment against Defendants Wells and Lopez in their individual and official capacities for compensatory and punitive damages in an amount to be determined at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. On Count I: An award of compensatory and punitive damages in an amount not less than $6,000,000.00 to be determined at trial against Aly El-Osery and Alisa Wigley-DeLara in their individual capacities for their having committed fraud on the court.

b. On Count II: An order setting aside the Court's final judgment in *Quarrie v. Wells et al.* (case no. 2:17-cv-00350-MV-GBW) due to the Board of Regents of NMT, El-Osery, and Wigley-DeLara's fraud on the court.

c. On Count III: The appointment of a special master to investigate the Board of Regents of NMT, El-Osery, and Wigley-DeLara's fraud on the court.

d. On Count IV: A judgment declaring that the 2015 Settlement Agreement between Plaintiff and the Board of Regent of NMT *et al.* was unilaterally rescinded by Plaintiff before he applied for admission to NMT in January of 2023.

e. On Count V: An award of compensatory damages in an amount not less than $5,000,000.00 to be determined at trial against the Board of Regents of NMT in their official capacities for their intentional racial discrimination against Plaintiff.

f. On Count VI: An award of compensatory damages in an amount not less than $5,000,000.00 to be determined at trial against the Board of Regents of NMT in their official capacities for their retaliation against Plaintiff.

g. On Count VII: A permanent prospective injunction under *Ex parte Young*, 209 US 123 (1908) forever enjoining the Board of Regents of NMT from continuing to racially discriminate and retaliate against Plaintiff as an African American.

h. On Count VIII: An award of compensatory and punitive damages in an amount

not less than $6,000,000.00 to be determined at trial against Stephen Wells and Daniel

Lopez in their individual and official capacities for having maliciously defamed Plaintiff.

     i. Such other and further relief as the Court deems just and proper.

**Plaintiff Demands a Jury Trial on All Issues of Fact that are Triable by Jury.**

                       Respectfully submitted,

Dated: July 18, 2023       */s/ Lindsay O'Brien Quarrie*
                              LINDSAY O'BRIEN QUARRIE
                              Plaintiff Pro Se
                              609 Neel Street
                              Socorro, NM 87801
                              (858) 334-9997
                              lindsay.o.quarrie@gmail.com

## VERIFICATION

     I, Lindsay O'Brien Quarrie, verify under penalty of perjury pursuant to 28 U.S.C. § 1746

that I am the Plaintiff herein. I have read the foregoing Verified Amended Complaint and know

the contents thereof, and the same is true to the best of my knowledge, except as to those matters

which are alleged upon information and belief, and as to those matters, I believe them to be true.

Executed this 18th day of July 2023.

                              */s/ Lindsay O'Brien Quarrie*
                              LINDSAY O'BRIEN QUARRIE