IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDSAY O'BRIEN QUARRIE,

        Plaintiff,

v.                                                         Case No: 1:23-cv-00546-JFR

The BOARD of REGENTS of the
NEW MEXICO INSTITUTE of
MINING and TECHNOLOGY in their
official capacities, STEPHEN WELLS in
his individual and official capacities,
DANIEL LOPEZ in his individual and
official capacities, ALY EL-OSERY in
his individual and official capacities,
and ALISA WIGLEY-DELARA in
her individual and official capacities,

        Defendants.

## DEFENDANT ALISA WIGLEY-DELARA'S
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

        COMES NOW Defendant Alisa Wigley-DeLara, by and through her counsel of record, Brant & Hunt, Attorneys, and pursuant to Fed. R. Civ. P. 12(b)(6) respectfully requests the Court dismiss Plaintiff's Amended Complaint for failure to state a claim against Ms. Wigley-DeLara.

        This is Plaintiff's fifth lawsuit arising out of his termination from the materials engineering PhD program at the New Mexico Institute of Mining and Technology (NMT). Plaintiff lost all four of his previous lawsuits. This lawsuit, like the ones before, has no merit. Plaintiff cannot establish claims for partial recission or fraud upon the court. Plaintiff's claims are barred by absolute immunity, res judicata, and collateral estoppel, and this lawsuit constitutes an improper collateral attack on the summary judgment entered against him in the previous lawsuit. For these reasons, Plaintiff's claims against Ms. Wigley-DeLara should be dismissed with prejudice.

## BACKGROUND RELEVANT TO PRESENT MOTION

As this is the third federal court case Plaintiff has filed arising out of his termination from the PhD program, the facts underlying this case are now well known to this Court and are set forth at length in *Quarrie I* and *Quarrie II*.[1] *Infra.* What follows is a brief recitation of Plaintiff's allegations relevant to the present lawsuit.

According to Plaintiff, he was terminated from the materials engineering PhD program at NMT April 27, 2012. *See* Complaint, ¶ 30. Despite ongoing problems with verbal abuse and threats of physical violence, Plaintiff maintains the sole reason for his termination and denial of his PhD degree is because he is African American. *See gen*. Complaint. This is the fifth lawsuit filed by Plaintiff arising out of his April 2012 termination.[2] In *Quarrie I,* Plaintiff filed suit against NMT alleging violation of the Civil Rights Act of 1964, Titles III, IV, and VI, and violation of the 1st, 5th, and 14th Amendment. After *Quarrie I* was dismissed with prejudice, Plaintiff and NMT entered into settlement negotiations. Plaintiff and NMT ultimately came to an agreement (Settlement Agreement). The relevant portions of the Settlement Agreement are set forth below.

> **Removal of "TERMINATED FROM GRADUATE PROGRAM" FROM Plaintiff's NMIMT Transcript and Other Related Documents:** The Parties agree that the Office of the Registrar of NMIMT (and/or any other NMIMT administrative office) will permanently remove the words "TERMINATED FROM

---

[1] ***Quarrie I:*** *Quarrie v. New Mexico Institute of Mining and Technology/New Mexico Tech,* Case No: 13-cv-00349, filed in the federal district court for the District of New Mexico on April 12, 2013. This case was dismissed with prejudice due to Plaintiff's repeated failure to pay a $786.45 sanction for NMT's expenses. [Doc 222]

***Quarrie II:*** *Quarrie v. Wells et al.,* Case No. 17-cv-00350, filed in the federal district court for the District of New Mexico on March 20, 2017. This case was dismissed with prejudice upon an award of summary judgment to Defendants. [Doc 453]

[2] **2017 Case:** *Quarrie v. Board of Regents of the New Mexico Institute of Mining and Tech.,* D-725-CV-2017-00188 filed in the Seventh Judicial District, County of Socorro, State of New Mexico on October 18, 2017. This case was dismissed with prejudice as Plaintiff missed the statute of limitations.

**2018 Case:** *Quarrie v. NM Tech at al.,* D-725-CV-2018-00065 filed in the Seventh Judicial District, County of Socorro, State of New Mexico on April 18, 2018. This case was dismissed with prejudice on again due to the expired statute of limitations.

GRADUATE PROGRAM" (or any similar language) from Plaintiff's NMIMT transcript, as well as from any other related documents in Plaintiff's academic and/or administrative files at NMIMT, within five (5) business days from the execution of this Settlement Agreement…

**No Future Application:** Plaintiff agrees that he will not re-apply for enrollment at NMIMT now or in the future.

*See* Exhibit A. Plaintiff signed the Settlement Agreement on October 8, 2015. *Id.*

Plaintiff claims that he unilaterally rescinded the Settlement Agreement for the first time on June 30, 2016 because NMT failed to remove four copies of the April 27, 2012 letter from his "academic and administrative files." *See* Complaint, ¶¶ 55-58. Plaintiff then reapplied for admission to NMT on December 2, 2016. *Id.*, ¶ 60. Plaintiff claims that because he "never received a response to his December 2, 2016 admissions application or a refund of his $45 application processing fee," he filed his second federal lawsuit against NMT, *Quarrie II*. *See* Complaint, ¶ 62.

In *Quarrie II*, in addition to NMT, Plaintiff also named NMT's counsel in *Quarrie I*, Chris Saucedo and the law firm of Saucedo Chavez, as defendants.[3] NMT was represented by the law firm of Conklin, Woodcock, & Ziegler, P.C. (Conklin Firm). Ms. Wigley-DeLara was employed by Conklin Firm at the time and was one of the attorneys who defended NMT in *Quarrie II*. A discovery dispute in *Quarrie II* forms the basis for Plaintiff's current claims against Ms. Wigley-DeLara.

After a lengthy discovery battle regarding how many copies of the April 27, 2012 existed in Plaintiff's records and where said letters were located, the Court entered an Order Granting in

---

[3] The claims against Mr. Saucedo and Saucedo Chavez were dismissed with prejudice on grounds of immunity on December 27, 2018. [Doc 90]

3

Part and Denying in Part Plaintiff's Motion for Sanctions on August 3, 2020.[4] [Doc 353] The Order states:

> Defendant NMT has admitted and acknowledged, under oath and in several different contexts, that at least one copy of the termination letter was in Plaintiff's academic and/or administrative file more than five business days after execution of the Settlement Agreement. **If, as Plaintiff believes, the presence of the termination letter in his file after that time voided the Settlement Agreement, then no further evidence is needed to support his theory.**

*Id.* at p. 12 (emphasis added). *Quarrie II* was eventually dismissed with prejudice upon summary judgment in favor of NMT on July 7, 2021. [Doc 453]

On October 18, 2022, more than one year after *Quarrie II* was dismissed and more than two years after the discovery dispute, Plaintiff again personally inspected his records at NMT. *See* Complaint, ¶ 81. Plaintiff claims that during this inspection, he discovered two additional copies of the April 27, 2012 letter in his administrative files. *Id.*, ¶ 83. Plaintiff then illogically jumped to the conclusion that Ms. Wigley-DeLara knew of the existence of these two letters in August 2020, and even though NMT disclosed the existence and location of twenty-six (26) copies of said letter, Ms. Wigley-DeLara purposefully omitted these two copies in order to thwart Plaintiff's entire lawsuit and cause him to lose on NMT's summary judgment motion when he surely would have won otherwise. *See* Complaint, ¶ 119. Plaintiff does not seem to consider the more logical explanation that these letters were added by NMT *after Quarrie II*'s conclusion. Nonetheless, without any evidence whatsoever, Plaintiff has set forth yet another conspiracy theory for his imagined slights. Plaintiff's Amended Complaint contains eight causes of action. Only the first three pertain to Ms. Wigley-DeLara: Count I-Fraud upon the Court; Count II-"Request for final judgment to be set aside"; and Count III – Request for appointment of a special master. Plaintiff's claims against Ms. Wigley-DeLara are without merit and fail for numerous reasons:

---
[4] No sanctions were assessed against NMT or Ms. Wigley-DeLara [Doc 353]

- Plaintiff cannot establish a partial rescission of the settlement agreement;

- Plaintiff's claims are barred by absolute immunity;

- Plaintiff cannot establish a claim against Ms. Wigley-DeLara for fraud upon the court;

- Plaintiff's clams are barred by res judicata and collateral estoppel; and

- the present lawsuit constitutes an improper collateral attack on the judgment entered against Plaintiff in *Quarrie II*.

For these reasons and the reasons stated herein below, Plaintiff's claims against Ms. Wigley-DeLara should be dismissed with prejudice.

## ARGUMENT AND AUTHORITIES

To survive a motion pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must state a plausible claim for relief on its face. *Ashcroft v. Iqbal,* 555 U.S. 662, 678 (2009)(internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (emphasis added). Allegations that are no more than conclusions are not entitled to the assumption of truth. *Id.* at 679.

"Without converting a motion to dismiss into a motion for summary judgment, a court can consider a document that is referred to in the complaint and is central to the plaintiff's claim even though the plaintiff does not incorporate by reference or attach a document to its complaint if the defendant submits an indisputably authentic copy to the court to be considered on a motion to dismiss. *Armstrong v. New Mexico Disability Determination Services,* 278 F.Supp.3d 1193, 1207-1208 (D.N.M.2017)(internal quotations omitted). "In a breach of contract action, provisions which are integral to the contract may be attached to the pleadings without converting the motion into one for summary judgment." *Ruegsegger v. Board of Regents of Western New Mexico University,*

2007-NMCA-030, 41, 141 N.M. 306, 315 (N.M.Ct.App.2007). The court may also take judicial notice of dockets and pleadings filed in other courts without converting the motion to dismiss into one for summary judgment. *Nichols v. Danley,* 266 F.Supp.2d 1310, 1312 (D.N.M. 2003)(citing *St. Louis Baptist Temple, Inc. v. F.D.I.C.,* 605 F.2d 1159, 1172 (10thCir.1979).

**1. Plaintiff Cannot Establish a Claim for Partial Rescission and the Amended Complaint Should be Dismissed**

In general, a contract can only be partially rescinded if the contract is severable or divisible. *City of Raton v. Arkansas River Power Authority,* 760 F.Supp.2d 1132, 1159-1160 (D.N.M. 2009); *Guidance Endodontics, LLC v. Dentsply International, Inc.,* 708 F.Supp.2d 1209, 1269 (D.N.M. 2010). By definition, a contract is severable or divisible if that contract "includes two or more promises each of which can be enforced separately, so that failure to perform one of the promises does not necessarily put the promisor in breach of the entire contract." *City of Raton* at 1159-1160 (internal quotations, citations omitted).

Whether a contract is severable is a question of law. *Guidance Endodontics* at 1269. It is also an issue of contract construction, and the essential question is to ascertain the intention of the parties. *Id.* A party's intent to enter into a divisible or severable contract may be expressed in two ways: (1) in the contract directly through a "severability clause"; or (2) indirectly "when the contract contains promises to do several things based upon *multiple distinct* considerations." *Id.* at 1269-1270 (internal quotations, citations omitted). A complainant is not permitted to accept the benefits received under a contract on the one hand and then shirk their disadvantages on the other. *Guidance Endodontics* at 1269.

> As a general rule the right to rescind must be exercised in toto. The contract must stand in all its provisions, or fall together. Accordingly, a party cannot repudiate a contract or compromise so far as its terms are unfavorable to him and claim the benefit of the residue.

*Ford v. Norton,* 1927-NMSC-067, ¶ 7, 32 N.M. 518 (1927).

In the present case, the copy of the Settlement Agreement attach hereto as Exhibit A was pulled directly from the exhibits to Plaintiff's original complaint.[5] [Doc 1] The Court may consider the Settlement Agreement and the relevant provisions set forth above without converting the present motion into one for summary judgment. *Armstrong, Ruegsegger, supra.*

Plaintiff claims he unilaterally rescinded the Settlement Agreement at least four times due to NMT's failure to remove the "damaging language" from his files. *See* Complaint, ¶ 95. According to Plaintiff, since the Settlement Agreement was unilaterally rescinded, he is now free to reapply to NMT as many times as he wishes. However, Plaintiff continues to file lawsuit after lawsuit, including this one, due to the allegedly "damaging language" contained in his academic and administrative records. Plaintiff's logic is fatally flawed, and his litigation tactics are wholly improper.

The Settlement Agreement contains neither a severability clause nor separate promises supported by separate consideration. *See* Ex. A. Therefore, Plaintiff only has two options: (1) the entire Settlement Agreement remains fully enforceable; or (2) the entire Settlement Agreement is rescinded. *Supra.*

If, as Plaintiff claims, the Settlement Agreement has been rescinded, then the entire Settlement Agreement has been rescinded and NMT is free to place whatever language it chooses in Plaintiff's files and Plaintiff cannot complain.[6] Whatever language was present in the file when Plaintiff inspected it on October 18, 2022 is irrelevant. If Plaintiff does not have to abide by the Settlement Agreement, then neither does NMT and this lawsuit should be dismissed with prejudice.

---

[5] Plaintiff did not mark the exhibits to his original complaint making referral to a specific exhibit impossible.
[6] Plaintiff confuses reapplication with readmission. The Settlement Agreement prohibited Plaintiff from re-applying to NMT, therefore he would never be admitted. If the Settlement Agreement has been completely rescinded, Plaintiff is free to reapply as many times as he likes but that does not mean NMT is required to accept him.

If, on the other hand, the Settlement Agreement remains fully in force, then Plaintiff has violated the Settlement Agreement each time he reapplies for admission to NMT. Further, in *Quarrie II*, Plaintiff sued NMT alleging they failed to re-admit him due to his race. [Doc. 1] In the 2017 Case, Plaintiff sued NMT's Board of Regents for failing to timely reply to his re-application. If the Settlement Agreement is fully in force, Plaintiff should not have filed these lawsuits at all. They are frivolous lawsuits to which NMT is entitled to the damages incurred in requiring it to defend. If *Quarrie II* was a frivolous lawsuit, then Plaintiff is not entitled to complain about Ms. Wigley-DeLara's action therein and the claims against her should be dismissed with prejudice.

Whether the entire Settlement Agreement remains in force or the entire Settlement Agreement has been rescinded, Plaintiff cannot maintain claims of any kind against Ms. Wigley-DeLara, and the Amended Complaint should be dismissed with prejudice.

**2. Plaintiff's Claims are Barred by Absolute Immunity**

The absolute prosecutorial immunity which protects attorneys prosecuting criminal actions on behalf of the state, also extends to attorneys defending civil actions on behalf of the state, if the activity complained of is "intimately associated with the court-related duties of government attorneys." *Benavidez v. Howard*, 931 F.3d 1225, *1230 (10thCir.2019); *Auriemma v. Montgomery,* 860 F.2d 273, *15 (7thCir.1988). In *Quarrie II*, Ms. Wigley-DeLara defended NMT against Plaintiff's various claims. NMT is a public institution of higher education in the state of New Mexico. Plaintiff alleges that Ms. Wigley-DeLara's acts during the discovery phase of *Quarrie II* were improper and constituted fraud upon the court. Answering discovery requests and filing motions are intimately associated with Ms. Wigley-DeLara's court-related duties. Therefore, Ms. Wigley-DeLara has absolute immunity for her actions in *Quarrie II* and all of Plaintiff's claims

against her should be dismissed with prejudice. *Benavidez* at 1229 (filing a motion for a protective order "belongs in the category of actions that are associated with the judicial process rather than those that are investigative or administrative in nature"); *Diaz v. New Mexico,* No. CIV 01-783, 2001 WL 37124877, *1 (D.N.M.2001)(ADA's acts of withholding exculpatory evidence and suborning perjury are absolutely immune).

3. **<u>Plaintiff Cannot Establish a Claim for Fraud upon the Court</u>**

Plaintiff cannot maintain this lawsuit for the reasons stated above. Even if he could – which he cannot – Plaintiff cannot establish a claim for fraud on the court against Ms. Wigley-DeLara, and Plaintiff's claims against Ms. Wigley-DeLara should be dismissed with prejudice.

A cause of action for fraud on the court is defined by case law, not Black's Law Dictionary. Fraud upon the court is fraud which is directed to the judicial machinery itself thus corrupting the Court's impartial functions. *Weese v. Schukman,* 98 F.3d 542, 552 (10thCir.1996); *Sanders v. Estate of Sanders,* 1996-NMCA-102, ¶ 25, 122 N.M. 468, *475 (N.M.Ct.App.1996). "Allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court." *Id.* Only the most egregious of misconduct, such as bribery of a judge or members of a jury; or the fabrication of evidence by a party in which an attorney is implicated will constitute fraud on the court." *Id.; United States v. Buck,* 281 F.3d 1336 (10thCir.2002). To prevail on a claim for fraud on the court, Plaintiff must show "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *O'Brien v. Mitchell,* 883 F.Supp.2d 1055, *1081 (D.N.M.2012).

In the present case, the only allegations Plaintiff makes to support his claim for fraud on the court are conclusory and thus, cannot be taken as true. *See* Complaint, ¶¶ 118-119; *Iqbal* at 679. Further, Plaintiff alleges that Ms. Wigley-DeLara concealed two copies of a letter during

9

pretrial discovery.[7] *See* Complaint, ¶ 118. Even if she did so – which she absolutely did not – this is not sufficient to establish a claim for fraud upon the court. *Supra.* Moreover, even accepting Plaintiff's factual allegations as true, which cannot be done, it is beyond reason that allegedly withholding the existence of two copies of the April 27, 2012 termination letter in discovery while producing twenty-six (26) copies of the same letter could hardy be viewed as an unconscionable plan or scheme designed to improperly influence the Court. *See* Amended Complaint, ¶¶ 68-74, 118 and 119, and *Quarrie II* Order Granting in Part and Denying in Part Plaintiff's Motion for Sanctions on August 3, 2020 [Doc 353], p. 12. Plaintiff's claims against Ms. Wigley-DeLara should be dismissed with prejudice.

### 4. **Plaintiff's Claims Against Ms. Wigley-DeLara are Barred by Res Judicata**

The requirements for res judicata are the same under both state and federal law. Res judicata applies when: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privities in the two suits; and (3) identity in the cause of action in both suits. *Potter v. Pierce,* 2014-NMCA-002, ¶ 7, 315 P.3d 303, *305 (N.M.Ct.App.2013). Res judicata applies only when the plaintiff has had a full and fair opportunity to litigate. *Id,* ¶ 9.

In *Quarrie II,* Plaintiff conducted discovery, including the taking of numerous depositions and serving multiple sets of discovery before his claims were ultimately dismissed with prejudice on summary judgment. *See gen. Quarrie II* docket. The docket in *Quarrie II* contains 470 entries. Regarding this specific issue with the April 27, 2012 letter:

- Plaintiff filed a Motion to Compel Discovery and Memorandum in Support Thereof [Doc 278] and a reply [Doc 302];

- Plaintiff filed a second Motion to Compel [Doc 286] and a reply [Doc 304];

---

[7] Again, Ms. Wigley DeLara expressly and impliedly denies any wrongdoing of any kind whatsoever.

- Plaintiff received one order addressing the two motions together – Order Granting in Part and Denying in Part Plaintiff's Motions to Compel Discovery Responses [Doc 308];

- Plaintiff then filed a Motion for Discovery and Spoliation Sanctions [Doc 325] and a reply [Doc338];

- Plaintiff received an Order Granting in Part and Denying in Part Plaintiff's Motion for Sanctions[8] [Doc 353];

- Plaintiff then filed a "Motion for Reconsideration of the Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Sanctions and Memorandum in Support Therefor [Doc 368] and a reply [Doc 391]; and

- Plaintiff received a Memorandum Opinion and Order [Doc 417].

Plaintiff has litigated the location and importance of the April 27, 2012 termination letter *ad nauseum*. The Court has already held that how many of these letters existed, where they were located, and when they were put there did not matter because NMT had already admitted it did not remove the letters from Plaintiff's file within the required five-day period. *Quarrie II* [Doc 353]. Any argument regarding the importance of these letters to Plaintiff's claims against NMT were fully litigated or should have been litigated in *Quarrie II*.

The first and second elements of res judicata and the requirement that Plaintiff have a full and fair opportunity to litigate are easily met. Regarding the first element, summary judgment was entered in favor of NMT disposing of *Quarrie II* on March 20, 2017. [Doc 453] Ms. Wigley-DeLara was NMT's attorney in *Quarrie II*.[9] Therefore she and NMT are in privity. The third element is also met, the identity of the cause of action in both suits is the same. The two causes of actions are the same when they arise out of a common nucleus of operative fact. *Potter*, ¶ 8. *Quarrie II* arose out of Plaintiff's allegedly wrongful termination and NMT's failure to reinstate him. The present case also arises out of Plaintiff's allegedly wrongful termination and NMT's

---

[8] Again, sanctions were not imposed against NMT or Ms. Wigley-DeLara
[9] *Marchman v. NCNB Texas National Bank,* 1995-NMSC-041, ¶ 56, 120 N.M. 74, 92 (1995)(attorneys act as agents for their client)

failure to reinstate him. All three elements are met and Plaintiff's claims against Ms. Wigley-DeLara are barred by res judicata and should be dismissed with prejudice.

## 5. Plaintiff's Claims Against Ms. Wigley-DeLara are Barred by Collateral Estoppel

Collateral estoppel has four elements: (1) the parties in the current action were the same or in privity with the parties in the prior action; (2) the subject matter of the two actions is different; (3) the ultimate fact or issue was actually litigated; and (4) the issue was necessarily determined. *Cordova v. N.M. Tax and Rev. Dept.,* No. CIV-08-0681, 2011 WL 7164459, *27, (D.N.M.2011). In the present case, element one is met. The subject matter, as it pertains to Ms. Wigley-DeLara, is different. Ms. Wigley-DeLara was not a party to *Quarrie II*, so the claims against her are necessarily different than those asserted against NMT. The issue of the number of copies of the termination letter; location of said letter; and the significance of the location and time of placement of said letters was actually litigated and necessarily determined. *Quarrie II*, [Doc 353]. Therefore, Plaintiff's claims against Ms. Wigley-DeLara are further barred by collateral estoppel and should be dismissed.

## 6. Plaintiff's Claims Constitute an Improper Collateral Attack on the Judgment entered in *Quarrie II*

A collateral attack is an attempt to avoid, defeat, or evade a judgment or to deny its force and effect in some incidental proceeding not provided for by law for the express purpose of attacking the judgment. *Lewis v. City of Santa Fe,* 2005-NMCA-032, ¶ 10, 137 N.M. 152 (Ct.App.N.M.2005). Plaintiff expressly admits that is exactly what he is doing. *See* Complaint, ¶¶ 123-130. Plaintiff cannot establish a claim for fraud upon the court pursuant to Fed. R. Civ. P. 60(d)(3) for the reasons stated above. Plaintiff has not set forth any other mechanism which would allow him to set aside the judgment in *Quarrie II*. Plaintiff cannot even explain how the two letters discovered in October 2022 have any significance or impact upon the judgment rendered in

*Quarrie II.* The claims against Ms. Wigley-DeLara constitute an improper collateral attack on the Court's judgment in *Quarrie II* and should be dismissed with prejudice.

**Pursuant to D.N.M.LR-Civ. 7.1(a), concurrence of Plaintiff and counsel for the other Defendants was sought. Plaintiff opposes the Motion. Counsel does not oppose the Motion.**

## CONCLUSION

Plaintiff needs to stop. He is wasting judicial time and resources. This will be the second time he has improperly sued counsel for NMT.[10] Plaintiff's tactics are oppressive and in bad faith. Plaintiff has zero basis for this lawsuit against Ms. Wigley-DeLara. The lawsuit is frivolous and a waste of time. There is no doubt that once this lawsuit ends, Plaintiff will continue to abuse the legal system and file lawsuit after lawsuit in an attempt to bully a PhD out of NMT. This lawsuit, however, as it pertains to Ms. Wigley-DeLara can and should be cut off at the knees now. There are a myriad of reasons why Plaintiff's claims against Ms. Wigley-DeLara fail. For all of these reasons, Plaintiff's claims against Ms. Wigley-DeLara should be dismissed with prejudice.

WHEREFORE, Defendant Alisa Wigley-DeLara respectfully requests the Court enter an order dismissing all of Plaintiff's claims against her with prejudice along with whatever other and further relief the Court deems just and proper.

*Respectfully Submitted,*

BRANT & HUNT, ATTORNEYS

By: ___/s/ J. Hunt___
Jeannie Hunt
202 Tulane Dr. SE
Albuquerque NM, 87106
T: 505-232-5300
jeannie@brantandhunt.com
***Attorneys for Ms. Wigley-DeLara***

---

[10] *Quarrie II*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of July 2023, I emailed Plaintiff *pro se* and electronically filed the foregoing through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

**By:** */s/ Jeannie Hunt*
Jeannie Hunt

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (hereinafter "Settlement Agreement") is entered into this 8th day of October, 2015, by and between Lindsay O'Brien Quarrie (hereinafter "Plaintiff") and New Mexico Institute of Mining and Technology (hereinafter "NMIMT"), Bhaskar Majumdar, Lorie Liebrock, Kenneth Minschwaner, Scott Teare, Daniel Lopez, and Peter Gerity (hereinafter, collectively, "Defendants"). Plaintiff and Defendants shall hereinafter collectively be described as "the Parties" for purposes of this Settlement Agreement.

WHEREAS Plaintiff filed an action against Defendants in the United States District Court for the District of New Mexico, case number 2:13-CV-00349-MV-SMV (hereinafter referred to as the "Lawsuit"), in which Plaintiff asserted various civil and constitutional rights violations, common law claims, and breach-of-contract claims against Defendants; and

WHEREAS the Lawsuit was dismissed with prejudice by the District Court; and

WHEREAS the District Court's dismissal was affirmed by the United States Court of Appeals for the Tenth Circuit; and

WHEREAS solely to avoid the uncertainty, inconvenience, and expense of continued litigation concerning the matters covered in this Settlement Agreement, the Parties desire to amicably resolve their claims against each other in the Lawsuit through settlement.

NOW THEREFORE, with reference to the forgoing and for mutual consideration which the Parties hereby acknowledge, and the promises and agreements set forth in the Settlement Agreement, the Parties agree as follows:

**Payment of $6,000.00 to Plaintiff:** The Parties agree that Defendants will pay, or will cause to be paid on their behalf, the sum of $6,000.00 to Plaintiff as a component of this Settlement Agreement within five (5) business days after the execution of this Settlement

EXHIBIT A

Agreement.

> **Removal of "TERMINATED FROM GRADUATE PROGRAM" from Plaintiff's NMIMT Transcript and Other Related Documents:** The Parties agree that the Office of the Registrar of NMIMT (and/or any other NMIMT administrative office) will permanently remove the words "TERMINATED FROM GRADUATE PROGRAM" (or any similar language) from Plaintiff's NMIMT transcript, as well as from any other related documents in Plaintiff's academic and/or administrative files at NMIMT, within five (5) business days from the execution of this Settlement Agreement. The Parties further agree that no such language shall ever be added to Plaintiff's NMIMT transcript (or to any other related documents in Plaintiff's academic and/or administrative files at NMIMT) at any future time by Defendants. Plaintiff agrees that he will not represent that he graduated from, or received a diploma from, NMIMT.
>
> **No Future Application:** Plaintiff agrees that he will not re-apply for enrollment at NMIMT now or in the future.

**Release by Plaintiff:** Except for the covenants and obligations created by this Settlement Agreement, Plaintiff hereby releases and forever discharges Defendants from any and all claims, demands, liabilities, actions, causes of action, damages, losses, costs, and expenses, of whatever kind and nature, known or unknown, fixed or contingent, which Plaintiff now has or ever had against Defendants concerning or relating in any way to the claims, allegations, or subject matter of the Lawsuit.

**Release by Defendants:** Except for the covenants and obligations created by this Settlement Agreement, Defendants hereby release and forever discharge Plaintiff from any and all claims, demands, liabilities, actions, causes of action, damages, losses, costs, and expenses, of whatever kind and nature, known or unknown, fixed or contingent, which Defendants could have

2

made against Plaintiff for actions and issues that arose while Plaintiff was a student at NMIMT.

**Fees, Costs, Expenses**: The parties agree that they shall each bear their own fees, costs and expenses incurred in the Lawsuit except Plaintiff explicitly agrees that he is responsible for paying the court ordered sanction issued against him in the lawsuit.

The Parties hereto declare and represent that they have relied on their own judgment and/or that of the counsel of their choosing in making this Settlement Agreement, and that each of them is aware of the terms hereof and understands that these terms are contractual and not mere recitations. This Settlement Agreement is binding on the Parties, their heirs, personal representatives and assigns, and on the officers, directors and shareholders of any corporate entities.

The Parties hereto are entering into this Settlement Agreement freely and voluntarily with the opportunity to have counsel of their choice review this Settlement Agreement for them.

The Parties understand that this Settlement Agreement is in full settlement of all matters, disputes, claims, and causes of action in any way arising out of or relating to the Lawsuit or any related appeals.

The Parties declare and represent that no promise, inducement, or agreement not expressed herein has been made to them and that this Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter.

The Parties agree to execute any and all documents necessary to effectuate and implement this Settlement Agreement.

**Governing Law and Jurisdiction:** The laws of the United States and the State of New Mexico shall govern all matters arising out of or relating to this Settlement Agreement.

**Complete Agreement:** This Settlement Agreement contains the complete understanding

and agreement between the Parties with respect to the resolution of the Lawsuit and supersedes all prior and contemporaneous understandings, agreements, representations by or between the Parties, whether written or oral, regarding the subject matter addressed therein.

**Signatures:** The Parties agree that this Settlement Agreement may be executed by the signatures of Plaintiff on his own behalf and counsel for Defendants (Christopher T. Saucedo) on behalf of Defendants.

**No Presumption Against Drafter:** The Parties agree that in the event of any dispute concerning the interpretation or construction of this Settlement Agreement, no presumption shall exist with respect to the Party initially drafting this Settlement Agreement, or regarding the size or resources of any Party. The Parties each agree that they have had ample opportunity to influence the choice of language and terms in this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement and Mutual Release effective as of October 8, 2015.

By: _____
Lindsay O'Brien Quarrie
Plaintiff Pro Se

By: _____
Christopher T. Saucedo
Attorney for Defendants

4