IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LINDSAY O'BRIEN QUARRIE,**

        **Plaintiff,**

v.                                    Case No:  1:23-cv-00546-JFR

**The BOARD of REGENTS of the
NEW MEXICO INSTITUTE of
MINING and TECHNOLOGY in their
official capacities, STEPHEN WELLS in
his individual and official capacities,
DANIEL LOPEZ in his individual and
official capacities, ALY EL-OSERY in
his individual and official capacities,
and ALISA WIGLEY-DELARA in
her individual and official capacities,**

        **Defendants.**

### DEFENDANT ALISA WIGLEY-DELARA'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

    COMES NOW Defendant Alisa Wigley-DeLara, by and through her counsel of record, Brant & Hunt, Attorneys, and respectfully requests the Court grant Ms. Wigley-DeLara's Motion to Dismiss [Doc 22] and dismiss Plaintiff's claims against her with prejudice.

    Plaintiff has failed to set forth any cogent reason why the Motion to Dismiss should not be granted.  The Motion should be granted and Plaintiff's claims against Ms. Wigley-DeLara should be dismissed with prejudice.

### 1.  Plaintiff Cannot Establish a Claim for Partial Rescission of the Settlement Agreement and the Motion should be Granted.

    Plaintiff's Response does not address Ms. Wigley-DeLara's partial rescission argument at all.  *See* [Doc 32]  Plaintiff has therefore conceded this argument is valid and the Motion should be granted.  *Morrison v. Sam's East, Inc.,* No. 11cv1078MV/LAM, 2013 WL 12328898, *5

1

(D.N.M. 2013)("Plaintiff's response addresses only his negligent supervision claim involving Dedra Dogon, thus he concedes that he has not presented a genuine issue of material fact regarding the other managers or employees."); *Montoya v. Berryhill,* No. CIV16-0901 JHR, 2017 WL 5484658, *10 (D.N.M. 2017)("The Commissioner effectively concedes this point, as she does not address it in her response brief."); *Vitamins Online, Inc. v. Heartwise, Inc.,* 71 F.4th 1222 (10th Cir. 2023)("NatureWise does not address this point and therefore concedes this finding.").

Plaintiff understands that the term "rescind" means "cancel". *Hawkins v. Berlin*, 1921-NMSC-040, ¶ 4, 27 N.M. 164 (1921). Plaintiff also understands that when he allegedly unilaterally rescinded the Settlement Agreement for the first time in 2016, that would have made the contract "null and void." *See* [Doc 11], ¶ 58. Therefore, according to Plaintiff, both Plaintiff *and* NMT were released from the promises contained therein – Plaintiff could reapply to NMT and Plaintiff attempted to return the $6,000 NMT paid in partial consideration for the Settlement Agreement. *Id.*, ¶¶ 58-60. Given this, it is completely illogical and improper that Plaintiff would file *Quarrie II* and the present lawsuit. If, as Plaintiff himself claims, the Settlement Agreement was "null and void," then not only was Plaintiff free to reapply to NMT, NMT was free to place whatever language they wished in his files.

Plaintiff is not permitted under the law to enforce the "no termination" language, while at the same time crying foul because NMT will not readmit him. Either the Settlement Agreement is rescinded in its entirety, or it is in force in its entirety. *Ford v. Norton,* 1927-NMSC-067, ¶ 7, 32 N.M. 518 (1927). If the Settlement Agreement is rescinded in its entirety, then Plaintiff is permitted to reapply as many times as he wishes but NMT is no longer prohibited with regard to the contents of Plaintiff's files. This lawsuit – which complains about the contents of Plaintiff's files – should be dismissed with prejudice. If, on the other hand, the Settlement Agreement remains

fully in force, then Plaintiff is still prohibited from reapplying; *Quarrie II* was a completely frivolous and improper lawsuit; and Plaintiff cannot complain of Ms. Wigley-DeLara's actions therein since Plaintiff violated the Settlement Agreement when he filed *Quarrie II*. There is no legal mechanism in which Plaintiff is permitted to continue to reapply while, at the same time, complaining about the contents of his NMT files and Plaintiff's Complaint should be dismissed with prejudice.

**2.  Plaintiff's Claims Against Ms. Wigley-DeLara are Still Barred by Absolute Immunity and the Motion should be Granted.**

Plaintiff does not deny that during *Quarrie* II, Ms. Wigley-DeLara was an attorney defending a civil action on behalf of the state. *See* [Doc 32]. Therefore, the Motion should be granted and the claims against Ms. Wigley-DeLara should be dismissed with prejudice. *Benavidez v. Howard,* 931 F.3d 1225, 1230 (10thCir.2019); *Auriemma v. Montgomery,* 860 F.2d 273, 276 (7thCir.1988).

Plaintiff's response instead argues that Ms. Wigley-DeLara:

> …does not qualify for absolute immunity because fraud on the court, unlike fraud against another party during discovery, is an attack on the judicial machinery of the court, itself and an officer of the court cannot defraud with impunity the very institution that it (sic) has sworn an oath to serve.  To claim the contrary would be absurd.

*See* [Doc 32], p 15.  This is Plaintiff's *opinion* which is not law.  Plaintiff does not support this argument with authority and the argument is without merit. *Lafayette v. Cobb,* 385 F.Supp.2d 1162, 1167 (D.N.M. 2005)("The Plaintiff has cited no authority…probably because none exists.").  The Motion should be granted and Plaintiff's claims should be dismissed with prejudice.

3

**3. Plaintiff Still Cannot Establish a Claim for Fraud on the Court and the Motion should be Granted.**

According to Plaintiff, and assuming he is being truthful regarding the contents of his file,[1] the two copies of the April 27, 2012 letter he found in his file in 2022 are identical to the two copies of the letter Bates numbered NMT.00064 and NMT.00065 produced by NMT in discovery in *Quarrie II*. As such, according to Plaintiff, during discovery in *Quarrie* II, Ms. Wigley-DeLara pulled those two letters out of his administrative file; copied them; Bates numbered them; produced them to Plaintiff; placed them back in the administrative file; and then bold-face lied to the Court about where she found them. *See* [Doc 32], pp. 3-5. This is nothing but paranoid speculation. Plaintiff even contradicts himself in the response:

> The two additional copies of the termination letter may have been in a legal file or a non-legal file. They may have been in the Office of Graduate Studies or another office altogether. They may have been transferred before or after the conclusion of *Quarrie II*. **Plaintiff simply does not know and will not even hazard a guess as to where they were located before he discovered them in person on October 18, 2022.**

*See* [Doc 32], p. 7 (emphasis added). If Plaintiff does not know where those documents were during *Quarrie II*, he has absolutely no basis to accuse Ms. Wigley-DeLara of misrepresenting anything to the Court and the Motion should be granted.

Plaintiff cites several cases in support of his claim that Ms. Wigley-DeLara committed fraud on the Court. None of these cases help Plaintiff. In *Demjanjuk v. Petrovsky,* 10 F.3d. 338 (6th Cir. 1993), the question was whether the United States Office of Special Investigations (OSI) committed fraud on the court when it withheld several exculpatory documents which would have proven that John Demjanjuk, while a guard at the Sobibór Nazi Concentration Camp, was not the same person as "Ivan the Terrible," the infamously cruel Nazi guard who operated the gas chamber

---

[1] Given Plaintiff's decade-long litigation history, nothing contained herein should be taken as an admission as to the truthfulness of anything stated by Plaintiff.

at the Treblinka Death Camp. The court appointed a special master who found the OSI had, in fact, improperly withheld exculpatory documents. Plaintiff cites *Demjanjuk* in support of his assertion that: "In the Tenth Circuit and its sister circuits (sic), six elements are necessary for demonstrating fraud on the court." This statement is untrue. The *Demjanjuk* case was held in the Sixth Circuit Court of Appeals. The special master in *Demjanjuk* – not the court – set forth six elements he believed established a claim for fraud on the court. *Demjanjuk* at p. 348. The Sixth Circuit never adopted these elements and Plaintiff cites no authority that the Tenth Circuit did either. *Demjanjuk* does not help Plaintiff.

In *Bulloch v. U.S.,* 763 F.2d 1115 (10th Cir. 1985), the Tenth Circuit held that the United States did not commit fraud on the court because the information allegedly withheld was available to plaintiffs the entire time. The court stated:

> This case demonstrates the very good reasons why judgments should be final and should not be disturbed. The plaintiffs to prevail must have shown by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment…
>
> Fraud on the court (other than fraud as to jurisdiction) is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements, or perjury. **It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court…**
>
> The plaintiffs in their independent action asserted fraud on the court in the withholding of data, records and letters. They have set forth extravagant statements in their briefs which have not been borne out by the record. The showing made by plaintiffs in the Bullock II hearings falls far short of proof of fraud on the court or any other kind of fraud.

*Bulloch* at p. 1121-1122 (emphasis added)(internal citations omitted). *Bulloch* does not aid Plaintiff either.

In *Robinson v. Audi Aktiengesellschaft,* 56 F.3d 1259 (10th Cir. 1995), the Tenth Circuit again declined to find fraud on the court. The Court held:

> Any request to set aside a judgment must be viewed in light of fundamental principle of the finality of duly entered judgments: namely, where a reasonable opportunity has been afforded to the parties to litigate a claim before a court having jurisdiction, and the court has finally decided the controversy, the interests of the public and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again.

*Robinson* at 1265. *Robinson* does not help Plaintiff either.

On page 15 of the Response [Doc 32], Plaintiff quotes from *Lockwood v. Bowles,* 46 F.R.D. 625 (D.D.C. 1969). In *Lockwood,* the court held that Plaintiff's claim for fraud on the court was barred by laches – having been brough 19 years after the original lawsuit. The court stated:

> Courts have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges, employment of counsel to 'influence' the court, bribery of the jury, and the involvement of an attorney (an officer of the court) in the perpetration of fraud.

*Lockwood* at 631-632. Plaintiff only alleges the involvement of an attorney in the perpetration of fraud. Those allegations fail for the reasons stated herein and *Lockwood* does not aid Plaintiff either.

Ms. Wigley-DeLara did not withhold any documents during discovery in *Quarrie II*. Even if she did – which she did not – it would have made no difference as to the outcome of *Quarrie II*. After the extensive discovery fight in *Quarrie II*, the Court held that any additional copies of the April 27, 2012 letter and their location were not relevant because: "If, as Plaintiff believes, the presence of the termination letter in his file after [the five-day deadline for removal in the Settlement Agreement] voided the Settlement Agreement, **then no further evidence is need to support this theory.**" *Quarrie II,* [Doc 353], p. 12 (emphasis added). Stated differently, the court found it did not matter how many copies of the April 27, 2012 letter there were or where those

6

copies were located, if Plaintiff's claim is NMT breached the Settlement Agreement by not removing the letters, then Plaintiff has all the evidence needed to prove that claim.[2]

The granting of NMT's summary judgement motion which ended the litigation in *Quarrie II* had absolutely nothing to do with the number and location of the copies of the April 27, 2012 letter. The court in *Quarrie II* granted NMT's summary judgment motion on grounds that NMT's rejection of Plaintiff's application for readmission was based upon NMT's "honest belief that the Settlement Agreement provided a legitimate, nondiscriminatory reason to reject Plaintiff's reapplication." *Quarrie II*, [Doc 453], pp. 17-18. The court specially found that the number and location of the various copies of the April 27, 2012 letter were not relevant to NMT's belief that the Settlement Agreement provided a legitimate, nondiscriminatory reason to reject Plaintiff's reapplication. *Id.*, p. 9 ("…even if Plaintiff did successfully rescind the Settlement Agreement, he must still establish that [NMT] did not honestly believe it was still in force"). Plaintiff still cannot establish a claim for fraud on the court for the reasons stated herein and the Motion should be granted.

**4. Plaintiff's Claims are Still Barred by Res Judicata and the Motion should be Granted.**

Plaintiff does not dispute the elements of res judicata are: (1) a final judgment on the merits in an earlier action; (2) identity of the parties or privities in the two suits; and (3) identity of the cause of action in both suits. *See* [Doc 22], p. 10; *Potter v. Pierce,* 2014-NMCA-002, ¶ 17, 315 P.3d 303, *305 (N.M.Ct.App.2013). Instead, Plaintiff claims that res judicata does not apply because "Plaintiff never brought a claim for fraud on the court before" and the final judgment obtained in *Quarrie II* was "corrupted." *See* [Doc 22], pp. 10-11. The final judgment was not

---

[2] Plaintiff admits this in his Response: "Even one copy of the termination letter in Plaintiff's non-legal academic/administrative file would be sufficient evidence to show that Defendant NMT was in breach of the Settlement Agreement." *See* [Doc 32], p. 8.

7

corrupted as the outcome of *Quarrie II* had literally nothing to do with the number of copies and location of the April 27, 2012 letter. *Supra.* Res judicata still applies even if Plaintiff "never brought a claim for fraud on the court before" because the two causes of action are the same when they arise out of a common nucleus of operative fact. *Potter*, ¶ 8. Plaintiff does not dispute that *Quarrie II* arose out of Plaintiff's allegedly wrongful termination and NMT's failure to reinstate him. Nor does Plaintiff dispute that this case also arises out of Plaintiff's allegedly wrongful termination and NMT's failure to reinstate him. Ms. Wigley-DeLara can establish all three required elements and Plaintiff's claims are barred by res judicata.

### 5. Plaintiff's Claims are Still Barred by Collateral Estoppel and the Motion should be Granted

Plaintiff does not dispute the elements of collateral estoppel are (1) the parties in the current action were the same or in privity with the parties in the prior action; (2) the subject matter of the two actions is different; (3) the ultimate fact or issue was actually litigated; and (4) the issue was necessarily determined. *See* [Doc 22], pp. 10, 15; *Cordova v. N.M. Tax and Rev. Dept.,* No. CIV-08-0681, 2011 WL 7164459, *27 (D.N.M.2011). Plaintiff only takes issue with the fourth element. Plaintiff claims collateral estoppel does not apply because the judgment rendered in *Quarrie II* was "corrupted". *See* [Doc 22], p. 10. The judgment was not "corrupted" for the reasons stated herein above. Collateral estoppel requires the issue be necessarily determined. It does not require the issue to be necessarily determined in Plaintiff's favor. Plaintiff's claims are barred by collateral estoppel and this Motion should be granted.

**6. Plaintiff's Claims Still Constitute an Improper Collateral Attack on the Judgment Entered in *Quarrie II* and the Motion should be Granted.**

Plaintiff claims the present lawsuit does not constitute an improper collateral attack on the judgment entered in *Quarrie II* because:

- "Plaintiff's sole purpose is to expose the truth and to seek the justice that he merits by was deprived of due to [Ms.] Wigley-DeLara's fraudulent conduct"; and

Neither *Quarrie II* nor the present lawsuit are frivolous because NMT racially discriminated and retaliated against him "in clear violation of Plaintiff's rights and liberties under the Fourteenth Amendment to the U.S. Constitution and his rights and protections under Title VI of the Civil Rights Act of 1964." *See* [Doc 32], p. 16.  The first bullet point makes no sense.  The law does not provide a mechanism whereby Plaintiff can overturn a prior judgment because he is attempting to "expose the truth."  The Court in *Quarrie II* found Plaintiff was not racially discriminated against. *Supra*.  Nor is alleged racial discrimination a mechanism for overturning a previous judgment. Ms. Wigley-DeLara did not commit fraud on the court for the reasons stated herein and there is no other mechanism by which Plaintiff can lawfully overturn the verdict in *Quarrie II*.  Therefore, the filing of the present lawsuit constitutes an improper collateral attack on the judgment in *Quarrie II* and this Motion should be granted.

**7. Plaintiff's Remaining Arguments are without Merit and the Motion should be Granted.**

The majority of Plaintiff's 17-page Response is nothing more than incoherent ranting. However, since Plaintiff felt it necessary to include, the incoherent ranting will be addressed briefly herein. Plaintiff first claims he has the "legal and moral responsibility to inform the Court that [Ms.] Wigley-Delara has now committed further fraud on the court in her Motion to Dismiss" because she disagreed with Plaintiff's version of events.  *See* [Doc 32], pp. 1-3.  Plaintiff's claims are without merit and his belief as to the location of the documents is flat wrong.  Ms. Wigley-

DeLara is not required to, nor will she ever agree with Plaintiff's version of events. Disagreeing with Plaintiff does not constitute fraud on the court. *Supra.*

Plaintiff also takes offense to statement that he "illogically jumps to conclusions." Plaintiff's claims regarding the extensive alleged conspiracy to hide the location of two copies of the April 27, 2012 letter while producing 26 other copies are well documented by Plaintiff himself. Plaintiff illogically jumps to conclusions. *Supra.* Plaintiff then spends the next eleven pages setting forth his argument and "evidentiary support." *See* [Doc], pp. 3-14. Plaintiff's conspiratorial ranting is not evidence for the reasons stated herein and the Motion should be granted. *Muse v. Muse,* 2009-NMCA-003, ¶ 51, 145 N.M. 451 (Ct.App. 2009)("The mere assertions and arguments of counsel are not evidence.").

## CONCLUSION

Plaintiff has litigated his various claims four times and lost each time. Plaintiff's own litigation behavior lends credence to the reasons why he was terminated from NMT's Ph.D. program. Plaintiff claims he wants justice but that is not correct. Justice was served in *Quarrie II*. Rather than take responsibility for his behavior during his graduate program, Plaintiff places the blame on literally everyone else. Plaintiff got himself terminated from the Ph.D. program and is now trying to bully a Ph.D. he did not earn from NMT. Both state court and this court have twice held Plaintiff's claims are without merit. Plaintiff was not wronged, whether Plaintiff believes this to be the case or not. For the reasons stated both in the Motion and herein, the Motion should be granted and Plaintiff's claims against Ms. Wigley-DeLara should be dismissed with prejudice.

*Respectfully Submitted,*

BRANT & HUNT, ATTORNEYS

By:     _/s/ J. Hunt_____
       Jeannie Hunt
202 Tulane Dr. SE
Albuquerque NM, 87106
T: 505-232-5300
jeannie@brantandhunt.com
**Attorneys for Ms. Wigley-DeLara**

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 14th day of September 2023, I sent a copy of the foregoing to Plaintiff *pro se* via email and I electronically filed the foregoing through the CM/ECF system, which caused Plaintiff *pro se* and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

**By:** */s/ Jeannie Hunt___*
      Jeannie Hunt