IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDSAY O'BRIEN QUARRIE,

      Plaintiff,

  v.                                 Civ. No. 23-546 MV/JFR

BOARD OF REGENTS FOR NEW MEXICO
INSTITUTE OF MINING & TECHNOLOGY et al.,

      Defendants.

MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION ON DOC. 25

**THIS MATTER** is before the Court by Order of Reference[1] in accordance with 28

U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849

(10th Cir. 1990). Doc. 20. On August 15, 2023, Defendants Board of Regents of the New

Mexico Institute of Mining and Technology ("NMT"), Stephen Wells, Daniel Lopez, and Aly El-

Osery filed a *Motion to Dismiss* ("Motion"). Doc. 25. Plaintiff filed a response in opposition on

September 15, 2023, and Defendants replied on October 13, 2023. Docs. 43, 56. The Motion is

ripe for decision.[2] Doc. 57. For the reasons that follow, the undersigned finds Defendants'

Motion is well-taken, and therefore recommends it be **GRANTED.** The undersigned further

---

[1]     By Order of Reference filed July 25, 2023, the presiding judge referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case. Doc. 20.

[2]     Plaintiff requested a hearing on the Motion. Doc. 60. "A party may (but need not) request oral arguments on any motion. Unless otherwise ordered by the Court, however, all motions will be decided on the briefs without a hearing." D.N.M.LR-Civ. 7.6(a). Being familiar with the pleadings and the applicable law, the undersigned has determined that a hearing is unnecessary and is comfortable issuing this recommendation without one, and thereby denies Plaintiff's request.

recommends that Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE** as any amendment to Plaintiff's Complaint[3] will prove futile.

## I. BACKGROUND

Plaintiff was a PhD Candidate at NMT in 2012.  Doc. 11 at 4.  On April 27, 2012, then-Dean of Graduate Studies Lorie Liebrock sent Plaintiff a letter terminating Plaintiff's enrollment. *Id.* at 5.  Ms. Liebrock attributed the termination to Plaintiff's threatening behavior toward his research committee.  *Id.*  Plaintiff filed suit in this Court against NMT and others in April 2013 alleging, *inter alia*, breach of contract and intentional racial discrimination.  *Id.* at 9.  That case was ultimately dismissed with prejudice for failure to comply with Court Orders.  Case No. 13-CV-349, Doc. 222.[4]  The parties nevertheless entered into a settlement agreement.[5]  Doc. 11 at 9-10.  As relevant here, the settlement agreement provides that NMT would "permanently remove the words 'TERMINATED FROM GRADUATE PROGRAM' (or similar language) from Plaintiff's [NMT] transcript, as well as from any other related documents in Plaintiff's academic and/or administrative files at [NMT], within five (5) business days."  *Id.* at 10.  The settlement agreement further provides that Plaintiff "will not re-apply for enrollment at [NMT] now or in the future."  Doc. 25 at 27.  Moreover, Plaintiff received $6,000.00 under the terms of the settlement agreement.  *Id.* at 26.

---

[3]    References to the "Complaint" are to Plaintiff's Amended Complaint, filed July 18, 2023, which is the operative complaint in this matter.  Doc. 11.

[4]    Plaintiff's appeal to the Tenth Circuit regarding the Court's earlier denial of his request for preliminary injunctive relief, and subsequent request for rehearing *en banc*, were unsuccessful.  Case No. 13-CV-349, Docs. 221, 232.

[5]    In the interest of clarity, the Court notes that the parties to the settlement agreement referenced herein are not all Defendants in instant litigation.  *See* Doc. 25 at 26 ("Settlement Agreement and Mutual Release").

In 2016, Plaintiff inspected his academic and administrative files at NMT and discovered four copies of the letter from Ms. Liebrock.  Doc. 11 at 10.  Plaintiff notified Daniel Lopez, then-President of NMT, that, in his view, the settlement agreement was void because NMT had retained this letter containing termination language.  *Id.* at 11.  Plaintiff began returning the money he received under the settlement agreement and applied for re-admission to NMT.  *Id.*  NMT did not cash Plaintiff's checks, returned them to him, and took no action on his application for re-admission.  *Id.*  In 2017, Plaintiff sued NMT and others in this Court alleging intentional racial discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("2017 lawsuit").  *Id.* at 11-12.  He further requested a permanent prospective injunction under *Ex parte Young*, 209 U.S. 123 (1908).  Case No. 17-CV-350, Doc. 150 at 23.

During discovery in that case, the magistrate judge ordered Defendants[6] to provide information regarding the letter from Ms. Liebrock terminating Plaintiff's enrollment in the graduate program at NMT, including how many copies existed and the locations of the same.  *Id.* at 12-14.  Defendants produced 24 total copies[7] of the letter and stated the locations where they were found.  *Id.*  Ultimately, summary judgment was entered against Plaintiff.  Case No. 17-CV-350, Doc. 453.  The Court concluded that, in refusing to consider Plaintiff's application for re-admission to NMT, Defendants were operating under the earnest belief that the settlement agreement was enforceable and prohibited Plaintiff's application for re-admission to NMT, despite Plaintiff's claim that he had unilaterally rescinded the settlement agreement.  *Id.* at 15-17.  Specifically, the Court noted that resolution of the issue of rescission of the settlement agreement

---

[6]    Some Defendants in Plaintiff's 2017 lawsuit are also parties this action.

[7]    In its PFRD on Defendant Wigley-DeLara's *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* (Doc. 22), the Court mistakenly stated that Defendants produced 26 total copies of the letter.  Doc. 70 at 7.  The Court takes this opportunity to correct that error and note that this distinction is of no consequence to its recommended disposition of that motion.

was unnecessary (though he failed to establish grounds for rescission) because the decisive issue was whether Defendants honestly believed the settlement agreement was in effect. *Id.* at 9, 17. In short, the Court concluded that Plaintiff failed to establish that the grounds Defendants proffered for refusing to consider his application were pretext for intentional racial discrimination. *Id.* at 15-17. Therefore, the Court dismissed the case with prejudice.[8] Case No. 17-CV-350, Doc. 454.

Over a year later, Plaintiff visited NMT and inspected his academic and administrative records. Doc. 11 at 15. At that time, he discovered two additional copies of the termination letter from Ms. Liebrock. *Id.* In November 2022, Plaintiff contacted NMT and stated that he was unilaterally rescinding the settlement agreement because the maintenance of the two additional copies of the letter constituted breach and fraud on the court. *Id.* at 18. Plaintiff re-applied for admission to NMT in January 2023. *Id.* at 19. NMT cancelled Plaintiff's re-admission application on the basis that Plaintiff was prohibited from re-applying to NMT under the terms of the settlement agreement. *Id.* at 19-20. About four months later, Plaintiff filed the instant lawsuit, again alleging intentional racial discrimination by NMT, contrary to Title VI, among other claims. Doc 1.

## II. ANALYSIS

The Court begins by setting out the legal standards applicable to the instant Motion and proceeds to detail the parties' arguments as contained in the pleadings. As illustrated below, because the Court resolves the Motion on certain of the grounds raised therein, it does not reach all of Defendants' arguments for dismissal.

---

[8] The Court's judgment was affirmed by the United States Court of Appeals for the Tenth Circuit on June 27, 2022. Doc. 11 at 15; Case No. 17-CV-350, Doc. 466-1. The Supreme Court of the United States denied Plaintiff's petition for a writ of certiorari and his subsequent request for rehearing. Case No. 17-CV-350, Docs. 469-470.

A.      **Legal Standards**

1.      *Pro Se Litigants*

The Court liberally construes pleadings submitted by pro se litigants and does not hold

them to the same standard as those drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94

(2007).  Here, the Court remains cognizant that the Complaint—whose sufficiency is being

tested by the instant Motion—was drafted by Plaintiff, who is proceeding pro se.  *See Pueblo de*

*Cochiti v. United States*, 647 F. Supp. 538, 542 (D.N.M. 1986) ("A Fed. R. Civ. P. Rule 12(b)(6)

motion tests the sufficiency of the [c]omplaint.").  However, the Court will not assume the role

of Plaintiff's advocate and expects him to comply with the requirements of the rules of

procedure.  *Merryfield v. Jordan*, 584 F.3d 923, 924 n.1 (10th Cir. 2009).

2.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Fed. R. Civ. P. 12(b)(6) provides that a party may assert by motion the defense of failure

to state a claim upon which relief can be granted.  In deciding a motion to dismiss premised on

Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views them

in the light most favorable to the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56

(2007).  While the facts in the complaint need not be detailed, they must be sufficient to allow

the Court to draw "the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.*

(internal quotation marks and citation omitted).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (alteration, internal quotation marks, and

citation omitted).  Indeed, "[c]onclusory allegations are not entitled to the assumption of truth."

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal quotation marks and citation omitted).

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). "A district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotation marks and citation omitted). Moreover, the Court may take judicial notice of its own files and records in deciding this type of motion. *Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *see Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006). Judicial notice of court filings is particularly helpful in situations where a motion to dismiss invokes preclusion doctrines. *See, e.g.*, *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003).

For the purpose of resolving the instant Motion, the Court has taken judicial notice of filings in the 2017 lawsuit and considers certain documents attached to the parties' pleadings as their authenticity is not disputed.

### 3. *Preclusion Doctrines*

"The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (internal quotation marks and citation omitted). "Res judicata generally applies where there is a final judgment on the merits which precludes the parties or their privies from relitigating issues that were decided or issues that could have been raised in the earlier action." *Id.* "A claim is barred by res judicata when the prior action involved identical claims and the

same parties or their privies." *Id.* "Collateral estoppel, however, does not always require that the parties be the same.  Instead, collateral estoppel requires an identity of issues raised in the successive pleadings and the determination of these issues by a valid final judgment to which such determination was essential." *Id.* (internal quotation marks and citation omitted).

### 4.    *Leave to Amend*

Leave to amend a complaint should be "freely give[n]" when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration, internal quotation marks, and citation omitted).  Generally, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits."  *Id.* (citation omitted).  Futility of amendment, however, justifies denial of leave to amend.  *Id.*  And, "though pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Knight v. Mooring Cap. Fund*, 749 F.3d 1180, 1191 (10th Cir. 2014) (alterations, internal quotation marks, and citation omitted).  Indeed, if an amended complaint would be unable to withstand a motion to dismiss, permitting leave to amend is unnecessary.  *TV Commc'ns Network, Inc. v. Turner Network Television*, 964 F.2d 1022, 1028 (10th Cir. 1992).

**B.     The Pleadings**

*1.     Complaint*

In his Complaint, Plaintiff brings various "counts" against Defendants.[9]  In Count One, brought against Defendants NMT and El-Osery, Plaintiff claims fraud on the court.  Doc. 11 at 20-22.  Counts Two and Three stem from Count One, as Plaintiff requests the final judgment in the 2017 lawsuit be set aside and the appointment of a special master to investigate the fraud on the court alleged in Count One, respectively.  *Id.* at 23-25.  In Count Four, Plaintiff requests a declaratory judgment.  *Id.* at 25-27.  In Count Five, brought against NMT, Plaintiff alleges intentional racial discrimination under Title VI and the Fourteenth Amendment to the United States Constitution.  Doc. 11 at 28-29.  In Count Six, brought against NMT, Plaintiff alleges retaliation under Title VI and the Fourteenth Amendment.[10]  *Id.* at 30-31. In Count Seven, Plaintiff requests a permanent prospective injunction.  *Id.* at 31.  And finally, in Count Eight, brought against Defendants Wells and Lopez, Plaintiff alleges malicious defamation under the Fourteenth Amendment.[11]  *Id.* at 31-32.

---

[9]      The Court's discussion is limited to those Defendants who proceed together in the instant Motion.  The claims also brought against Defendant DeLara have been addressed separately.  Doc. 70.

[10]     With respect to each of Plaintiff's claims under Title VI, he also invokes the Fourteenth Amendment. Plaintiff cannot bring a cause of action directly under the Fourteenth Amendment; the proper mechanism for bringing a claim alleging a constitutional violation is through 42 U.S.C. § 1983.  *Martin v. City of Albuquerque*, 396 F. Supp. 3d 1008, 1014 n.1 (D.N.M. 2019).  Moreover, Plaintiff does not allege which right under the Fourteenth Amendment he claims was violated, i.e., equal protection or due process.  *See* Doc. 11 at 28-31.  Rather, he focuses entirely on Title VI.  *See id.*  For this reason, and because the Fourteenth Amendment does not appear to itself establish a general right to be free from retaliation, the Court assumes that Plaintiff proceeds only under Title VI.  *See Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996).  *But see Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 30 (1st Cir. 2012) (assuming, for the purpose of reviewing a single case, that the Fourteenth Amendment supports a cause of action for retaliation because argument to the contrary was waived on appeal).

[11]     The Court notes that Plaintiff does not invoke 42 U.S.C. § 1983, the appropriate mechanism for redressing a federal constitutional violation, *Martin*, 396 F. Supp. 3d at 1014 n.1, but has liberally construed his pleading.  *See Lankford v. Wagner*, 853 F.3d 1119, 1121 (10th Cir. 2017) (noting that "some allowances for deficiencies" in pro se litigants' pleadings are made by federal courts, such as "confusion of legal theories").

2.     *Defendants' Motion*

In their Motion, Defendants argue that Count One must fail because fraud on the court cannot constitute the basis for an independent claim. Doc. 25 at 16. Defendants posit that Count Two is an impermissible collateral attack on the final judgment in Plaintiff's 2017 lawsuit. *Id.* at 17. As to Count Three, Defendants argue that Plaintiff has failed to demonstrate the necessity of appointment of a special master. *Id.* at 18-19. Defendants contend that Plaintiff's request for a declaratory judgment in Count Four fails because there was no material breach of the settlement agreement in effect between the parties. *Id.* at 19-21. Defendants argue that Counts Five and Six are barred by res judicata. *Id.* at 8-9. Defendants further argue that Plaintiff fails to allege any intentional racial discrimination in Count Five and that his Fourteenth Amendment claim is properly brought under 42 U.S.C. § 1983, a statute Plaintiff does not invoke. Doc. 25 at 21-23. As to Count Six, Defendants argue that Plaintiff does not make a prima facie case of retaliation, instead relying on "a general, circumstantial allegation." *Id.* at 23-24. Additionally, it is Defendants' position that Defendant NMT is shielded by immunity under the Eleventh Amendment[12] to the United States Constitution as to Count Seven, and that Defendants Wells

---

[12] The only ground Defendants advance with respect to immunity under the Eleventh Amendment is that "Plaintiff has not alleged a non-frivolous violation of federal law." Doc. 25 at 12-13. They rely on the proposition from *Pearlman v. Vigil-Jiron*, 71 F. App'x 11, 15 (10th Cir. 2003) that a claim is frivolous if it is clearly meritless or foreclosed by a previous authoritative decision. Doc. 25 at 13. Because the Eleventh Amendment is an issue of subject-matter jurisdiction, the Court has a duty to consider this issue. *See* Fed. R. Civ. P. 12(h)(3). Defendants' argument that Plaintiff's claim is frivolous because Plaintiff has no constitutional right to higher education is misplaced. Doc. 25 at 13. Plaintiff's request for a permanent prospective injunction is premised, at least partially, on Title VI. Doc. 11 at 31. Defendants appear to further argue that the claim is frivolous because Plaintiff's claim is barred by res judicata. Doc. 25 at 12-13. The Court is not persuaded. A claim that is determined to be barred by res judicata is not *necessarily* frivolous. *See Hodges v. Publix Super Markets, Inc.*, 372 F. App'x 74, 78 (11th Cir. 2010). And, in any event, the Court must engage in an analysis of res judicata to make the determination whether Plaintiff's claim is barred. So, the Court is satisfied that the non-frivolity element, as well as the other necessary elements excepting immunity under the Eleventh Amendment, are met at this juncture and addresses this argument no further. *See Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001) (enumerating the factors necessary for a plaintiff to proceed in a suit against state officials).

and Lopez enjoy qualified immunity as to Count Eight.[13]  *Id.* at 11-16.  Finally, Defendants

maintain that all of Plaintiff's claims are barred by collateral estoppel.  *Id.* at 9-11.

       3.     *Plaintiff's Response*[14]

In his response, Plaintiff states that, in his view, "***none*** of the claims and requests" in his

Complaint are "barred by the doctrines of res judicata and collateral estoppel for the simple

reason that neither those claims and requests nor the issues underlying them have ever been

litigated and determined by this Court or any other federal or state court."  Doc. 43 at 1

(emphasis in original).  Plaintiff further states that the alleged conduct giving rise to his claims

for "fraud on the court, intentional racial discrimination and retaliation under Title VI, and

malicious defamation under the Fourteenth Amendment . . . took place or were first discovered"

subsequent to the completion of the 2017 lawsuit.  *Id.* at 2.  So, according to Plaintiff, "it is a

chronological impossibility that this Court or any other federal or state court could have

previously litigated and determined the claims and requests or issues underlying those claims and

requests" contained in the Complaint.  *Id.*  He argues against the immunity arguments advanced

by Defendants.  *Id.*

       4.     *Defendants' Reply*

Defendants reply by rebutting Plaintiff's argument that his claims in the instant case arise

from a different set of facts than those litigated in his 2017 lawsuit because the Tenth Circuit

---

[13]    Given the Court's recommendation that Count Eight be dismissed for failure to state a claim, it does not reach the issue of qualified immunity.  *See Abeyta ex rel. Martinez v. Chama Valley Ind. Sch. Dist., No. 19,* 77 F.3d 1253, 1255 (10ᵗʰ Cir. 1996) (noting that the issue of qualified immunity need not be reached "if [the] plaintiff's claim is not actionable"); *Hall v. Hupp,* 523 F. App'x 521, 523 (10ᵗʰ Cir. 2013) (noting that, in granting a Rule 12(b)(6) motion, the district court "did not reach the issue of qualified immunity" as it concluded the plaintiff failed to state a claim for relief).

[14]    The Court notes that much of Plaintiff's responsive pleading is restatement and expansion of the allegations contained in his Complaint.  *See Yazzie v. Bd. of Cnty. Comm'rs,* No. 15-CV-109, 2015 WL 13651028, at *2 (D.N.M. Oct. 22, 2015) (stating that, with respect to a response to a Rule 12 motion to dismiss, repeating the allegations from a complaint "is essentially no response at all").

applies the transactional approach to the cause-of-action element of res judicata.  Doc. 56 at 2-5.
They further rebut Plaintiff's argument by noting that preclusion still applies to claims arising
from newly discovered evidence.  *Id.* at 3.  Defendants contend that, in his response, Plaintiff
failed to address their argument that he failed to plausibly allege a constitutional violation and
argue that any constitutional violation alleged is not clearly established.  *Id.* at 6-7.  Defendants
further argue that Plaintiff's fraud on the court claim, as pursued against Defendant El-Osery, is
improper because Plaintiff seeks monetary damages with respect to Defendant El-Osery, when
the proper remedy for fraud on the court is relief from judgment.  *Id.* at 7.  Defendants maintain
that Plaintiff fails to argue that Defendants did not believe the settlement agreement to be valid
and enforceable and that, in his response to their Motion, he advances a new theory for breach of
the settlement agreement.  *Id.* at 10-11.

**C.      Plaintiff Has Failed to State a Claim for Fraud on the Court and Counts One, Two, and Three Must Be Dismissed**

In Count One, brought against Defendants NMT and El-Osery, Plaintiff claims fraud on
the court.  Doc. 11 at 20-22.  Counts Two and Three stem from Count One, as Plaintiff requests
the final judgment in the 2017 lawsuit be set aside and the appointment of a special master to
investigate the fraud on the court alleged in Count One, respectively.  Doc. 11 at 23-25.

Contrary to Defendants' argument,[15] "the savings clause to Rule 60(b) [i.e., Rule 60(d)[16]]
recognizes the power of a court to entertain an independent action to relieve a party from a
judgment."  *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005) (internal

---

[15]      The Court understands Defendants' position that Plaintiff's request for compensatory and punitive damages
is not the relief contemplated by Rule 60, i.e., relief from judgment.  Docs. 25 at 16; 56 at 7-8.

[16]      Rule 60(d) was added to the Federal Rules of Civil Procedure in 2007, but before that time, Rule 60(b)
contained a savings clause referencing the same avenue of relief.

quotation marks and citation omitted).  It is under Rule 60(d)(3) that Plaintiff proceeds.  Doc. 11

at 23.  The Tenth Circuit has described fraud on the court as follows:

> Fraud on the court is fraud which is directed to the judicial machinery itself and is
> not fraud between the parties or fraudulent documents, false statements or perjury.
> It has been held that allegations of nondisclosure in pretrial discovery will not
> support an action for fraud on the court.  It is thus fraud where the impartial
> functions of the court have been directly corrupted.

*United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (citation and omissions omitted).

The Tenth Circuit in *Buck* continued:

> Generally speaking, only the most egregious conduct, such as bribery of a judge or
> members of a jury, or the fabrication of evidence by a party in which an attorney is
> implicated will constitute a fraud on the court.  Less egregious conduct, such as
> nondisclosure to the court of certain facts allegedly pertinent to the matter before
> it, will not ordinarily rise to the level of fraud on the court.  Moreover, fraud on the
> court, whatever else it embodies, requires a showing that one has acted with an
> intent to deceive or defraud the court.  A proper balance between the interests
> underlying finality on the one hand and allowing relief due to inequitable conduct
> on the other makes it essential that there be a showing of conscious wrongdoing—
> what can properly be characterized as a deliberate scheme to defraud—before relief
> from a final judgment is appropriate.  Thus, when there is no intent to deceive, the
> fact that misrepresentations were made to a court is not itself a sufficient basis for
> setting aside a judgment under the guise of fraud on the court.

*Id.*  (internal quotation marks, citations, and omission omitted).  The interest in correcting fraud

on the court "involves far more than an injury to a single litigant.  It is a wrong against the

institutions set up to protect and safeguard the public."  *Chambers v. NASCO, Inc.*, 501 U.S. 32,

44 (1991) (internal quotation marks and citation omitted).

For the reasons set out by the Court in its PFRD recommending Plaintiff's fraud on the

Court claim against Defendant Wigley-DeLara be dismissed, Doc. 70 at 7-9, it likewise

recommends the claim as it relates to the Defendants associated with the instant Motion be

dismissed.  In the interest of completeness, the Court restates its reasoning here.

Plaintiff alleges Defendants' conduct to have occurred during the discovery process in his

2017 lawsuit, in which he claimed racial discrimination on the part of NMT and others contrary

to Title VI.   Doc. 11 at 11-18.   During discovery in that case, the magistrate judge ordered

Defendants[17] to provide information regarding the letter from Ms. Liebrock, terminating

Plaintiff's enrollment in the graduate program at NMT, including how many copies existed and

the locations of the same.   *Id.* at 5, 12-14.   Defendants produced 24 total copies[18] of the letter and

stated the locations where they were found.   *Id.*   Plaintiff's 2017 lawsuit was ultimately

dismissed at summary judgment because the Court concluded that NMT had a legitimate,

nondiscriminatory reason for rejecting Plaintiff's application for admission—the settlement

agreement the parties reached following Plaintiff's termination from NMT's PhD program—and

Plaintiff did not offer sufficient evidence that this reason was pretextual.   *Id.* at 15; Case No. 17-

CV-350, Doc. 453.   Over a year later, Plaintiff visited NMT and inspected his academic and

administrative records.   Doc. 11 at 15.   At that time, he discovered two additional copies of the

termination letter.   *Id.*   Plaintiff alleges that Defendants knew of the existence and location of the

two additional copies of the letter at issue as the Court ordered production of all copies of the

letter in Plaintiff's 2017 lawsuit and they "willfully violated the Court's two orders . . . by

knowingly concealing the two copies of the . . . letter later discovered by Plaintiff."   *Id.* at 17-18.

According to Plaintiff, "[t]he act of knowingly concealing the existence and location of

documents in willful violation of a court order constitutes fraud on the court."   *Id.* at 18.   As it

did with respect to Defendant Wigley-DeLara, the Court disagrees, and its analysis with respect

to Defendants pursuing the instant Motion is the same.   Doc. 70 at 7-9.

---

[17]      This reference is to the group of Defendants in Plaintiff's 2017 lawsuit who are also Defendants in this action.

[18]      In its PFRD on Defendant Wigley-DeLara's *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* (Doc. 22), the Court mistakenly stated that Defendants produced 26 total copies of the letter.   Doc. 70 at 7.   The Court takes this opportunity to correct that error and note that this distinction is of no consequence to its recommended disposition of that motion.

Again, what Defendants are alleged by Plaintiff to have done was directed at him, not the Court. At best, what Plaintiff has alleged is discovery misconduct and violation of an order compelling production of documents, which falls well short of the conduct necessary to establish fraud on the court. Indeed, such fraud must be *direct*; it can occur "where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function." *Weese v. Schukman*, 98 F.3d 524, 552 (10th Cir. 1996). Even still, if Plaintiff's allegations can be read as conduct constituting nondisclosure of facts relevant to the matter before the court (they cannot, as explained below), they do not rise to the level of fraud. *Id.* at 553; *see also Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989) ("The mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to fraud upon the court for purposes of vacating a judgment under Rule 60([d])." (alteration, internal quotation marks, and citation omitted)); 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2870 (3d ed.) (explaining that a "fraud connected with the presentation of a case to a court" is not a fraud on the court as contemplated under Rule 60(d)(3)).

Moreover, given the Court's reasoning in granting summary judgment against Plaintiff in his 2017 lawsuit, i.e., failure to establish pretext, it is evident that even if Defendants had produced these letters at that time, such production would have done nothing to influence the Court's ultimate conclusion. Indeed, the additional copies of the letter at issue here, whose nondisclosure form the basis for Plaintiff's claim for fraud on the court, would have had no impact on the disposition of that lawsuit. So, again, Plaintiff's allegations do not rise to the level of fraud on the court.[19] *See United States v. Sierra Pac. Indus.*, 862 F.3d 1157, 1168 (9th Cir.

---

[19]     Even if they did, and Plaintiff proved his claim by clear and convincing evidence at a later date, he would remain unsuccessful: "Even where there is clear and convincing evidence of fraud on the court, courts will not disturb

2017) (stating that, to establish fraud on the court, "relevant misrepresentations must go to the central issue in the case, and must affect the outcome of the case.  In other words, the newly discovered misrepresentations must significantly change the picture already drawn by previously available evidence." (internal quotation marks and citations omitted)); *see, e.g.*, *United States v. Estate of Stonehill*, 660 F.3d 415, 446 (9th Cir. 2011) (concluding that failure to produce the entirety of a book of photographs did not amount to fraud on the court because it "had a limited effect on the district court's decision" and full production would not "have significantly changed the information available to the district court"); *Liggins v. Clark Cnty. Sch. Bd.*, No. 09-CV-77, 2014 WL 6460776, at *4-5 (W.D. Va. Nov. 17, 2014) (rejecting a claim for fraud on the court where the plaintiff alleged discovery materials were withheld from him but their production would not have altered the outcome of summary judgment in the case).

Therefore, Plaintiff's claim for fraud on the court (Count One) against Defendants must be dismissed.  Accordingly, as explained above, Counts Two and Three against Defendants must be dismissed as well.  Plaintiff has not presented facts demonstrating fraud on the court, so the Court cannot set aside a judgment as Plaintiff requests in Count Two.  Fed. R. Civ. P. 60(d)(3). Likewise, in the absence of a showing of fraud on the court, there is no basis to appoint a special master to investigate the claimed fraud as Plaintiff requests in Count Three.  *See In re Wyoming Tight Sands Antitrust Cases*, 715 F. Supp. 307, 307-308 (D. Kan. 1989) ("The party requesting the appointment [of a special master] bears the burden of showing the necessity of such an appointment.").

---

the judgment unless the misconduct had some effect on the judgment."  *Bryant v. Thomas*, No. 09-CV-1334, 2015 WL 5243878, at *9 (S.D. Cal. Sept. 8, 2015); *see also Gupta v. U.S. Att'y Gen.*, 556 F. App'x 838, 841 (11th Cir. 2014) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246-47 (1944)), *overruled on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17 (1976)).

Here, as is true with his claims against Defendant Wigley-DeLara, affording Plaintiff leave to file an amended complaint, which would be the third complaint in this matter, to attempt to correct the deficiencies in his claim against Defendants for fraud on the court, would prove futile.  The facts upon which Plaintiff relies, i.e., Defendants "willfully violat[ing] the Court's two orders . . . by knowingly concealing the two copies of the . . . letter later discovered by Plaintiff," Doc. 11 at 17-18, do not amount to fraud on the court.  Again, this is particularly true because, assuming such facts are true, they have nothing to do with the ultimate disposition of Plaintiff's 2017 lawsuit.  Where a claim for fraud on the court is meritless and cannot be cured by stronger pleading, amendment is futile.  *See, e.g.*, *Levin v. Frank*, No. 18-CV-1292, 2019 WL 1754216, at *8-9 (N.D.N.Y. Apr. 19, 2019) (dismissing a claim for fraud on the court and finding the same "entirely meritless" because, *inter alia*, the defendants' non-disclosure of material in a prior lawsuit had nothing to do with the dispositive issue, and finding that leave to amend would prove futile because such deficiency could not be cured through "better pleading"); *see also Sapse v. Ferm*, 457 F. App'x 654, 655 (9th Cir. 2011) ("The district court did not abuse its discretion by denying leave to amend the complaint to plead fraud on the court because amendment would have been futile.").  Thus, the undersigned recommends dismissal of Counts One, Two, and Three with prejudice.

**D.      Counts Five and Seven Are Barred by Res Judicata**

In Count Five, brought against NMT, Plaintiff alleges intentional racial discrimination under Title VI.  Doc. 11 at 28-29.  In Count Seven,[20] Plaintiff requests a permanent prospective injunction against NMT.  *Id.* at 31.

---

[20]      Defendants state that they seek preclusion under res judicata as to Counts Five and Six, but proceed to argue that applies to Plaintiff's intentional racial discrimination claim and his request for a permanent prospective injunction.  Doc. 25 at 8.  The Court notes that these claims are Counts Five and Seven, respectively.  Doc. 11 at 28-29, 31.  The

> Res judicata requires the satisfaction of four elements: (1) the prior suit must have
> ended with a judgment on the merits; (2) the parties must be identical or in privity;
> (3) the suit must be based on the same cause of action; and (4) the plaintiff must
> have had a full and fair opportunity to litigate the claim in the prior suit.

*Nwosun v. Gen. Mills Rests.*, 124 F.3d 1255, 1257 (10th Cir. 1997).  *But see Yapp v. Excel Corp.*,

186 F.3d 1222, 1226 n.4 (10th Cir. 1999) (discussing whether the fourth element is a

"requirement" or an "exception").[21]  The third element is disputed here.  Doc. 43 at 1-2.  With

respect to the cause of action, the Tenth Circuit has adopted the "transactional" approach to

determine whether the action is the same.  It provides that a final judgment in the earlier

litigation

> extinguishes all rights of the plaintiff to remedies against the defendant with respect
> to all or any part of the transaction, or series of connected transactions, out of which
> the action arose.  What constitutes a transaction or a series is to be determined
> pragmatically considering whether the facts are related in time, space, origin, or
> motivation, and whether they form a convenient trial unit.

*King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir. 1997) (internal quotation marks and citation

omitted).

In Plaintiff's 2017 lawsuit, his claims for intentional racial discrimination under Title VI

and request for a permanent prospective injunction were dismissed on summary judgment.  Case

No. 17-CV-350, Doc. 453 at 17-18.  Here, it is Plaintiff's position that his claims arise from

separate transactions because the facts forming the basis for his claims were discovered after his

---

Court therefore understands Defendants to argue that Count Six is barred under collateral estoppel.  It agrees, and
discusses the same accordingly below.

[21]     The Tenth Circuit has explained that the fourth element of res judicata is not truly an *element*; rather, "the
absence of a full and fair opportunity to litigate is more appropriately treated as an exception to the application of
claim preclusion when the three referenced requirements are met."  *Johnson v. Spencer*, 950 F.3d 680, 708 (10th Cir.
2020) (internal quotation marks and citation omitted).  "The full and fair opportunity to litigate inquiry is a narrow
exception that applies only where the requirements of due process were not afforded—where a party shows a
deficiency that would undermine the fundamental fairness of the original proceedings."  *Id.* at 709 (internal quotation
marks and citation omitted).  While Plaintiff seemingly contests this fourth element (or exception), Doc. 43 at 1-2, he
does not claim that the proceedings in the 2017 lawsuit were procedurally flawed, so the Court does not dwell on this
issue any further.

2017 lawsuit.  Doc. 43 at 1-2.  These facts, as Plaintiff explains them, are premised on his
discovery of two additional copies of the letter that he did not receive in discovery in the 2017
lawsuit, as discussed more fully above, and his subsequent application for readmission to NMT's
PhD program following his claimed unilateral rescission of the parties' settlement agreement.
*See generally* Docs. 11, 43.

Plaintiff premised his 2017 lawsuit on Defendants' alleged failure to abide by the terms
of the aforementioned settlement agreement.  Specifically, Plaintiff alleged that "NMT had never
met the [s]ettlement [a]greement's condition precedent of removing any and all similar language
to 'Terminated from Graduate Program' from any related documents in Plaintiff's academic and
administrative files at NMT" which he claimed rendered the settlement agreement "void, invalid,
and unenforceable."  Case No. 17-CV-350, Doc. 150 at 14.  So, on this basis, Plaintiff re-applied
for admission to NMT's PhD program; though the settlement agreement prohibited him from
doing so, in his view, he no longer had to abide by this provision because he claimed the
settlement agreement was void.  *Id.* at 14, 18.  Plaintiff further alleged that the restriction on re-
applying to NMT was "a thinly disguised act of intentional and malicious racial discrimination
against Plaintiff as an African American, since it violates both his equal protection and
substantive due process rights under the Fourteenth Amendment."  *Id.* at 14.  On this basis,
Plaintiff claimed the settlement agreement was void *ab initio*.  *Id.* at 15.  When Plaintiff's
application for re-admission to NMT was not considered, he brought a claim under Title VI and
sought a permanent prospective injunction.  *Id.* at 20-23.

These claims were dismissed on summary judgment.  Case No. 17-CV-350, Doc. 453 at
17-18.  In relevant part, the Court concluded that Plaintiff "failed to rebut Defendants' honest
belief that the [s]ettlement [a]greement was enforceable and provided a legitimate,

nondiscriminatory reason to reject Plaintiff's application for readmission." *Id.* at 17.  The Court further noted that resolution of the issue of rescission of the settlement agreement was unnecessary (though he failed to establish grounds for rescission) because the decisive issue was whether Defendants honestly believed the settlement agreement was in effect. *Id.* at 9, 17. Therefore, the Court entered summary judgment against Plaintiff as to his Title VI claim and dismissed his claim for injunctive relief. *Id.* at 17.

Now, in the instant case, Plaintiff claims that Defendant NMT is in "material breach" of the settlement agreement, and that he has unilaterally rescinded the same due to the two additional copies of the letter Plaintiff located during his inspection of his academic and administrative file on October 18, 2022.  Doc. 11 at 18.  So, on this basis, Plaintiff applied for readmission to NMT's PhD program on January 15, 2023.  *Id.* at 19.  NMT did not process his application and returned to him the fee for the same because the settlement agreement bars Plaintiff from seeking readmission to NMT.  *Id.* at 19-20.

The Court concludes that this lawsuit is the same cause of action as the 2017 lawsuit with respect to Counts Five and Seven as it arises out of the same series of transactions that gave rise to the earlier litigation.  As explained above, Plaintiff's claims in both cases arise from his belief that Defendants have not complied with the provision of the settlement agreement that required NMT to "remove the words 'TERMINATED FROM GRADUATE PROGRAM' (or any similar language from Plaintiff's [NMT] transcript, as well as from any other related documents in Plaintiff's academic and/or administrative files."  Doc. 25 at 27.  In the 2017 lawsuit, Plaintiff claimed NMT failed to do this.  Case No. 17-CV-350, Doc. 150 at 14.  Here, he makes the same claim, though, according to him, the letters "are different from those copies of the Liebrock termination letter previously discovered by Plaintiff or previously provided by Defendant

NMT."[22]  Doc. 11 at 17.  In both cases, it is this conduct that forms the basis for his claim for intentional racial discrimination under Title VI and request for a permanent prospective injunction.  More to the point, it is Plaintiff's position (in both cases) that the maintenance of the letter at issue by Defendants in his academic and/or administrative files is a material breach of the settlement agreement, rendering the same unenforceable, and releasing him from the settlement agreement's term prohibiting him from seeking readmission to NMT.  *See generally* Doc. 11; Case No. 17-CV-350, Doc. 150.  But Plaintiff's argument fails, and his claims are barred.

Plaintiff's position that "the facts giving rise" to his claims in the instant case "took place or were first discovered" subsequent to his 2017 lawsuit is of no consequence.  Res judicata is "inapplicable where, between the first and second suits, an intervening change in the law or modification of *significant* facts create new legal conditions."  *Spradling v. City of Tulsa*, 198 F.3d 1219, 1223 (10th Cir. 2000) (emphasis added).  The change in facts, as Plaintiff alleges it, is insignificant.  Plaintiff's allegation is that the existence of the two additional copies of the letter at issue was known to Defendants during the 2017 lawsuit.  Doc. 11 at 17.  So, maintenance of this letter is not new conduct.  Nor does it meet an exception such that preclusion does not apply.[23]  Indeed, as explained at length above, the outcome of his 2017 lawsuit had nothing to do with the number of copies of the letter that Defendants maintained; Plaintiff would have been

---

[22]    While Plaintiff states that the two additional copies of the letter "are different," Doc. 11 at 17, the text of the letters is identical.  Docs. 11-1; 11-2; 11-3; 11-4.

[23]    "[C]laim preclusion applies to all claims arising from the same underlying transaction even where the new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence."  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1244 (10th Cir. 2017) (internal quotation marks and citation omitted).  Plaintiff has not argued that either of these, or any other legally sound exception to res judicata, applies.  Though Plaintiff does allege wrongdoing by Defendants in his claim for fraud on the court, to the extent the allegations of wrongdoing in his pleadings can be read to argue fraudulent concealment, the Court's conclusion remains unchanged.

unable to prove his claims even if these two letters were produced to him in discovery.[24]  *See* Restatement (Second) of Judgments § 25, cmt. b ("A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment."); *see also New Mexico ex rel. King v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1346, 1354 (D.N.M. 2013) ("It is well settled that parties cannot avoid the preclusive effects of res judicata by dressing up claims already litigated in new legal theories.").  And even assuming the outcome may have been different, Plaintiff's claims are still not spared.  *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2335 (2016) (Alito, J., dissenting) ("'The fact that new evidence might change the outcome of the case does not affect application of [the] claim preclusion doctrine.'" (omission omitted) (quoting *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003)), *abrogated by Dobbs v. Jackson Women's Health Org.*, 579 U.S. 215 (2022); Restatement of Judgments § 1, cmt. b (stating that the general rules of claim preclusion are "applicable although the party against whom a judgment is rendered is later in a position to produce better evidence so that he would be successful in a second action"); 18 Charles Alan Wright, Arthur Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4408 (3d ed. 2023) ("Simply offering to provide new evidence does not establish a new claim, even if the evidence could not have been produced at the time of the first trial").

---

[24]      Plaintiff knew of the existence of this letter since 2012 and received 24 copies of it during discovery in his 2017 lawsuit.  Doc. 11 at 5, 12-14.  For purpose of addressing the arguments arising from the instant Motion, it is of no significance that he discovered two additional copies in his academic/administrative file at a later date. Again, the basis of judgment in favor of Defendants in the 2017 lawsuit was Plaintiff's failure "to rebut Defendants' honest belief that the [s]ettlement [a]greement was enforceable and provided a legitimate, nondiscriminatory reason to reject Plaintiff's application for readmission" to NMT.  Case No. 17-CV-350, Doc. 453 at 17.  In this case, Plaintiff again alleges that NMT's failure to consider his application for readmission on the basis that he was prohibited from seeking readmission by the settlement agreement "is nothing but pretext for Defendant NMT's racial discrimination against Plaintiff."  Doc. 11 at 29.  Plaintiff does not address Defendants' argument on this point (that Plaintiff must refute their belief that the contract was valid) or make a contrary allegation, so the Court does not address it either.  *See Garcia v. Bayer Essure, Inc.*, No. 21-CV-666, 2023 WL 4235670, at *4 (D.N.M. June 28, 2023) (noting, with respect to a Rule 12(b)(6) motion, that "[the p]laintiff does not address these arguments in her [r]esponse, and any counterarguments are thus waived.").

For these reasons, the undersigned recommends dismissing Counts Five and Seven because they are barred by res judicata. The undersigned further recommends that this dismissal be with prejudice because leave to amend is futile if a litigant cannot proceed with his claims because they are barred. *Knight*, 749 F.3d at 1191-92.

## E.     Counts Four and Six Are Barred by Collateral Estoppel

In Count Four, Plaintiff requests a judgment declaring that the settlement agreement was unilaterally rescinded by him. Doc. 11 at 25-27. In Count Six, brought against NMT, Plaintiff alleges retaliation under Title VI. *Id.* at 30-31.

> Collateral estoppel bars the adjudication of a particular claim in a subsequent proceeding when four elements are met. Those elements are: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Smith v. Dinwiddie*, 510 F.3d 1180, 1188 (10th Cir. 2007). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). It is undisputed that the parties in this action and the 2017 lawsuit are the same or in privity. Moreover, the 2017 lawsuit was finally adjudicated on the merits. *See Goichman v. City of Aspen*, 859 F.2d 1466, 1471 n.13 (10th Cir. 1988) ("[S]ummary judgment operates as an adjudication on the merits."); *Lipin v. Wisehart Springs Inn, Inc.*, 843 F. App'x 103, 108 (10th Cir. 2021). So, the Court's focus is on the remaining elements of collateral estoppel. The Court's analysis of collateral estoppel extends only to Counts Four and Six, and much of it is similar to that above for res judicata. The Court avoids undue reiteration here to the extent practicable.

The issue in the 2017 lawsuit was whether the provision of the settlement agreement that prohibits Plaintiff from seeking readmission to NMT was in fact pretext for intentional racial discrimination. *See generally* Case No. 17-CV-350, Doc. 453. After a full and fair opportunity to litigate that issue,[25] judgment was entered against Plaintiff. *Id*. The issue is the same here, and it is does not matter that Plaintiff styles his claims for relief differently. *Allen*, 449 U.S. at 94; *Moss*, 559 F.3d at 1161 ("Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."); *see, e.g.*, Doc. 11 at 22 (discussing Plaintiff's position that the settlement agreement's prohibition on his readmission to NMT as Defendants' reason for not considering his applications "in 2016 and thereafter" is "entirely dishonest and nothing but a pretext for Defendant NMT's ongoing racial discrimination and retaliation against Plaintiff as an African American"); *id*. at 29 (same). That Plaintiff now premises his claims on a different pair of the same letter he was aware of in the prior suit makes no difference.[26] Again, what Plaintiff does now is claim to have unilaterally rescinded the settlement agreement with NMT which allowed him to apply for readmission to NMT—an application which was not

---

[25]     Factors considered when determining whether a litigant had a full and fair opportunity to litigate an issue for purposes of collateral estoppel are "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate the issue fully, and whether effective litigation was limited by the nature or relationship of the parties." *Moss v. Kopp*, 559 F.3d 1155, 1161 n.8 (10th Cir. 2009). Where "there [is] no indication that such an opportunity was unavailable" then "there [is] no question that the full and fair opportunity element [is] met." *Id.* Here, nothing before the Court indicates that these factors are met, particularly because Plaintiff litigated this issue through summary judgment: "In the context of a defendant's motion for summary judgment, a plaintiff has a full and fair opportunity to litigate if [he] is allowed to submit evidence to defeat a motion for summary judgment." *Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1211 (10th Cir. 2001). Plaintiff was allowed to, and did, present evidence to defeat summary judgment in the 2017 lawsuit. Case No. 17-CV-350, Doc. 419 (Plaintiff's Response to Motion for Summary Judgment, including 40 Exhibits totaling 101 pages).

[26]     "Preclusion ordinarily is proper if the question is one of the legal effect of a document identical in all relevant respects to another document whose effect was adjudicated in a prior action." Restatement (Second) of Judgments § 27 cmt. c. The legal effect of the letter was adjudicated in the 2017 lawsuit—it had no legal effect on the outcome. *See, e.g.*, Case No. 17-CV-350, Doc. 353 ("If, as Plaintiff believes, the presence of the termination letter in his file after that time voided the [s]ettlement [a]greement, then no further evidence is needed to support his theory.").

considered pursuant to the terms of the settlement agreement.  Doc. 11 at 18-20, 27.  Plaintiff

relies nearly entirely on the same legal theory[27] as he did in the 2017 lawsuit, but this time he

claims that this contract rescission comes on the heels of his discovery of a pair of letters in his

academic/administrative file after the conclusion of the 2017 lawsuit. [28]  *Id.*  But that discovery is

not what is at issue here.  The Court in the 2017 lawsuit did not dispose of his claim on the issue

of letters remaining in NMT's records.  Rather, the Court concluded that Plaintiff "failed to rebut

Defendants' honest belief that the [s]ettlement [a]greement was enforceable and provided a

legitimate, nondiscriminatory reason to reject Plaintiff's application for readmission."   Case No.

17-CV-350, Doc. 453 at 17.  The Court has addressed this point extensively: Plaintiff's 2017

lawsuit was unsuccessful because he failed to prove pretext.  *See Starker v. United States*, 602

F.2d 1341, 1346 (9th Cir. 1979) ("*Montana v. United States* . . . . held collateral estoppel

applicable even though some facts differed in the two cases at issue, because the differing facts

were not 'essential to the judgment' or 'of controlling significance' in the first case." (quoting

---

[27]       The Court understands that Plaintiff's claims retaliation under Title VI, at least in part, on the basis that "Plaintiff had engaged in the constitutionally protected right of filing a federal lawsuit" against Defendants in 2017. Doc. 11 at 30.  However, this does nothing to change the Court's analysis of collateral estoppel because, as explained, the same legal principles that governed the 2017 lawsuit govern the instant case as well.  *See Vensom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 635 (10th Cir. 2008) (noting that the same legal framework governs claims for discrimination and retaliation under Title VI).

[28]       The Court assumes that Plaintiff considers this a new breach of the settlement agreement.  But, according to Plaintiff, this pair of letters existed during the pendency of his 2017 lawsuit, he just was not aware of them, so truly, under Plaintiff's theory, this is not a new breach of the settlement agreement. Doc. 11 at 17-18.  The parties agree that New Mexico contract law controls.  *See* Docs. 25 at 19-20; 43 at 19; *Chavez v. New Mexico*, 397 F.3d 826, 830-31 (10th Cir. 2005) ("In this case, the parties agree that New Mexico contract law applies . . . and we proceed accordingly.").  And New Mexico applies the "single-wrong" theory to most contracts, meaning that the failure to fully cure a previous breach does not constitute a new breach.  *Tull v. City of Albuquerque*, 907 P.2d 1010, 1010-12 (N.M. Ct. App. 1995); *Village of Angel Fire v. Bd. of Cnty. Comm'rs*, 242 P.3d 371, 375 (N.M. Ct. App. 2010).  In any event, as explained at length, the Court's disposition in the 2017 lawsuit turned on whether Defendants believed the settlement agreement to be enforceable, not on this issue of Plaintiff's alleged rescission of the settlement agreement.  Case No. 17-CV-350, Doc. 453 at 9, 17.  Here, Plaintiff appears to acknowledge that Defendants were acting under the belief that the settlement agreement is enforceable, Doc. 11 at 19-20, which serves to erode his request for a declaratory judgment that he rescinded the settlement agreement. *See Quarrie v. Wells*, 2021 WL 1109227, at *8 (D.N.M. Mar. 23, 2021), *adopted* 2021 WL 8945945 (D.N.M. July 7, 2021).

440 U.S. 147, 158 (1979)); *see also Gardias v. Cal. State Univ.*, No. 09-CV-2090, 2010 WL

3258615, at *3 (N.D. Cal. Aug. 17, 2010) ("[The plaintiff] contends that the present lawsuit

raises new issues because the complaint addresses a different time period than the prior action.

True, the event in question here allegedly occurred on a different date . . . and, the facts

underlying [the plaintiff's] prior claims are not completely identical to those underlying the

claim in the instant action.  However, the claims are in substance, the same.  Moreover, the slight

factual differences between the underlying facts are irrelevant in light of the legal principles that

govern the instant and prior actions.").

     Again, it is of no consequence that Plaintiff argues "chronological impossibility" of issue

preclusion because he discovered these letters after his 2017 lawsuit concluded.  Doc. 43 at 1-2.

Indeed, "a different time period alone does not necessarily preclude application of collateral

estoppel."  *B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 663 (10th Cir. 2006).

To be sure, the Tenth Circuit has applied a list of questions to consider when evaluating whether

the "issue" in the two proceedings is the same:

> Is there a substantial overlap between the evidence or argument to be advanced in
> the second proceeding and that advanced in the first? Does the new evidence or
> argument involve application of the same rule of law as that involved in the prior
> proceeding? Could pretrial preparation and discovery relating to the matter
> presented in the first action reasonably be expected to have embraced the matter
> sought to be presented in the second?  How closely related are the claims involved
> in the two proceedings?

*Id.* (quoting Restatement (Second) of Judgments § 27 cmt. c).  If these questions are answered in

the affirmative, "it is likely that the 'issue' involved in the two proceedings is the same."  *Id.*

Such is the case here.

     Plaintiff seeks to advance the two additional copies of the letter he discovered after the

conclusion of the 2017 lawsuit, though it is the same letter used in that suit and had no bearing

on the Court's disposition of that case, and the premise of his argument is the same: unilateral

rescission of the settlement agreement for alleged breach by Defendants.  *See generally* Case No. 17-CV-350, Doc. 453.  The rule of law to be applied in this case is the same as that applied in the 2017 lawsuit: whether Plaintiff can establish that Defendants' proffered reason for declining to process his application for readmission to NMT, i.e., that it is prohibited by the terms of the settlement agreement and Defendants are operating under the belief that the same is in effect, is pretext such that Plaintiff can establish his claims under Title VI.  *See* Doc. 11 at 22, 28-31.  The third inquiry is easily answered in the affirmative.  As discussed at length above, the letter at issue here was a piece of the discovery process in the 2017 lawsuit that caused dispute between the parties, and ultimately 24 copies of the letter were produced to Plaintiff, though the two additional copies of the letter forming the basis of Plaintiff's claim in the instant suit were absent from discovery in that case.  And finally, the claims in the instant case are indisputably related to those adjudicated in the 2017 lawsuit.

For these reasons, the undersigned recommends dismissing Counts Four and Six because they are barred by collateral estoppel.  As with those claims precluded by res judicata, amendment would prove futile for these claims.  *See Knight*, 749 F.3d at 1191-92.  Thus, the Court further recommends that dismissal of these claims be with prejudice.

## F.   Count Eight Fails as a Matter of Law

In Count Eight, Plaintiff alleges that Defendants Wells and Lopez[29] maliciously defamed him under the Fourteenth Amendment to the United States Constitution.  Doc. 11 at 31-33.  Specifically, Plaintiff states that in July 2020, an attorney sent a letter to the New Mexico Office

---

[29]   Plaintiff sues Defendants Wells and Lopez in their individual and official capacities.  Doc. 11 at 31-32. Claims against individuals in their official capacities are made for the purpose of imposing liability on the entity the individuals represent, so official-capacity lawsuits are simply another way of pleading an action against that entity. *Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993).  Because the Court concludes that no constitutional violation occurred, NMT cannot be held liable on this claim.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

of the Attorney General and appended a letter thereto from Defendant Wells that stated "[n]o actions have been taken by NMT that violated our university's policies." *Id.* at 32 (internal quotation marks and citation omitted).  Plaintiff further states that in a September 2020 deposition, Defendant Lopez testified that he believed Plaintiff received due process when he was expelled from NMT's PhD program in 2012 "without providing any evidence to support his testimony." *Id.*  Plaintiff alleges that when Defendants Wells and Lopez made these statements "they both knew that their statements were false." *Id.*  He claims these statements "qualify as defamation because they are in effect calling Plaintiff a liar by contradicting his claim based on documented evidence that he was in fact expelled from the PhD program at NMT in 2012 without due process and thus in violation of NMT's policy and procedures for non-academic discipline." *Id.* at 33.  Plaintiff alleges that, but for these statements, "the U.S. Government would have already discharged Plaintiff's federal student loans." *Id.*

Before analyzing Plaintiff's claim for defamation any further, the Court disposes of it as it extends to Defendant Lopez.  The statement from Defendant Lopez that Plaintiff alleges is defamatory occurred during a deposition taken in the course of litigation, and he therefore cannot be held liable for a claim arising under 42 U.S.C. § 1983 based on his testimony.  *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("[A] trial witness has absolute immunity to *any* claim based on the witness' testimony."); *Griffin v. Summerlin*, 78 F.3d 1227, 1231 (7th Cir. 1995) ("The policy considerations underlying witness immunity for testimony in open court apply with equal force to other forms of testimony such as depositions and affidavits.").  So, the Court proceeds to

analyze this claim only as it extends to Defendant Wells, and under the assumption that his

statement is defamatory.[30]

Defamation alone is not sufficient to establish a claim for deprivation of a liberty interest

under the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 708-10 (1976). Rather,

defamation is generally a tort actionable under state law, rather than a constitutional deprivation

actionable under federal law. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). However, litigants

can establish a claim for defamation under 42 U.S.C. § 1983 under a very narrow set of

circumstances. Injury to one's reputation alone is not "a liberty interest under the Fourteenth

Amendment." *Siegert*, 500 U.S. at 233 (internal quotation marks and citation omitted); *see also*

*Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726 (10th Cir. 2000) ("[D]efamation,

standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest.").

A claim for constitutional defamation may arise if it occurs in tandem with the loss of an

interest or status previously granted by state or federal law. *Davis*, 424 U.S. at 710-11, 711 n.5.

"There are two elements of a stigma-plus claim: (1) governmental defamation and (2) an

alteration in legal status." *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012). As stated

above, Plaintiff claims that his lost interest is delayed discharge of student loans by the federal

government. Docs. 11 at 33; 43 at 23. A constitutional property interest in a particular benefit

arises where an individual has a "legitimate claim of entitlement" to it. *Bd. of Regents v. Roth*,

408 U.S. 564, 577 (1972). The Court assumes without deciding that Plaintiff has an interest in

discharge of his student loans. *See Florance v. Barnett*, No. 22-CV-399, 2023 WL 1815946, at

*4 (N.D. Ind. Feb. 8, 2023) ("The [c]ourt will assume without deciding that [the plaintiff] could

---

[30] Allegedly defamatory statements must be "sufficiently derogatory" to injure a plaintiff's reputation and "capable of being proved false." *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 885 (10th Cir. 2012) (citation omitted). Defendants present no argument that this requirement is not satisfied.

have a property interest in the forgiveness of his student loans, which does not strike the [c]ourt as inherently unreasonable.").  But Plaintiff's claim still fails.

According to Plaintiff, the statement of Defendant Wells caused the "*delayed* discharge of Plaintiff's federal student loans."  Doc. 43 at 23 (emphasis added).  Plaintiff does not allege that he has been totally deprived of this interest,[31] but rather that this interest would have already come to pass in its entirety but for Defendant Wells's alleged conduct.  Doc. 11 at 33.  Plaintiff's allegation, as the Court understands it and slim as it is,[32] goes to the heart of how the federal government processes student loan discharge and the requirements for obtaining such discharge. Plaintiff has no property interest here.  *See Florance*, 2023 WL 1815946, at *5 (concluding that no "property right to the process of loan forgiveness, or any other process, exists").

For these reasons, the undersigned recommends that Count Eight be dismissed for failure to state a claim upon which relief may be granted.  Because Plaintiff cannot maintain a constitutional defamation claim against Defendant Lopez, as he is immune from liability, or demonstrate a constitutionally protected interest altered by the allegedly defamatory action of Defendant Wells, leave to amend the Complaint will prove futile.  *See Knight*, 749 F.3d at 1191;

---

[31]     The Court is cognizant that a delay in the receipt of benefits can amount to constitutional deprivation.  *See Schroeder v. City of Chicago*, 927 F.2d 957, 959-60 (7th Cir. 1991).  As explained, however, that has no bearing on the dispositive issue here.

[32]     Plaintiff does not cite to any statutory provision or other authority governing the type of student loan discharge for which he is purportedly eligible or otherwise discuss the process for obtaining the same.  Indeed, Plaintiff states, without elaboration, that the alleged conduct at issue has delayed the discharge of his federal student loans. Doc. 11 at 33. The Court notes that it could recommend disposing of his claim for defamation on this ground alone, because factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."); *Brooks*, 985 F.3d at 1281 ("Conclusory allegations are not entitled to the assumption of truth."); *id.* ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid or any factual enhancement.").  And while liberal construction is afforded to a pro se litigant's pleadings, he must still allege sufficient facts, and the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal quotation marks and citation omitted). Nevertheless, the Court is able to engage in reasoned analysis in the absence of stronger pleading and, as discussed herein, concludes that the opportunity for amendment on this claim to attempt to withstand dismissal would prove futile.

*TV Commc'ns Network, Inc.*, 964 F.2d at 1028.  Therefore, the undersigned further recommends that dismissal of this claim be with prejudice.

## II. CONCLUSION AND RECOMMENDATION

For the reasons stated herein, the undersigned recommends as follows: (1) Defendants'
Motion be **GRANTED** because Plaintiff's claims are barred or he has otherwise failed to state
claims for which he can obtain relief; and (2) Plaintiff's claims against Defendants be

**DISMISSED WITH PREJUDICE** as any amendment to Plaintiff's Complaint will prove futile.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a
copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party
must file any objections with the Clerk of the District Court within the fourteen-day
period if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
United States Magistrate Judge